Coos,
Apr. 7, 1953. } No. 4157.

BERTHA E. FISSETTE, *Adm'x*

*v.*

BOSTON & MAINE RAILROAD.

*John E. Gormley, Edgar M. Bowker* and *Robert E. Bowker* (*Mr. Gormley* orally), for the plaintiff.

*Hinkley & Hinkley* (*Mr. Walter D. Hinkley* orally), for the defendant.

LAMPRON, J.   There was evidence on which defendant could be

found negligent. Although this was a private crossing, for the period of ten years during which the engineer had operated this train off and on he had blown four blasts of the whistle between Causeway Street (1368 feet north) and Sand Street. It was also the custom and practice of the defendant to ring the bell of the engine over that whole distance. This custom was well known to the decedent and to many of his neighbors. There was ample evidence that neither of these warnings was given on the day of the accident. This was sufficient evidence on which the jury could find the defendant negligent in this respect. *Dowse* v. *Railroad,* 91 N. H. 419, 421, 423.

Defendant's rules permitted a maximum speed of eight miles an hour over this crossing. It was defendant's custom and practice to pass over the crossing at that speed. There was evidence from which it could be found that the train's speed, on that day was at least thirty-five miles per hour. Decedent's body and part of his car were found on the west side of the rail. The engine was damaged on its right side. The width of the rail in an east and west direction at the crossing was about five feet. As soon as the brakes on the train were applied it would start to slow down. It was for the jury to say if it was negligent for the defendant to operate its train on this crossing at this speed with no one watching for travelers who might be using it and without giving the usual warning signals. *Manseau* v. *Railroad,* 96 N. H. 7, 10. We see no reason to change the doctrine of the *Manseau* case nor do we see any features in this case which substantially distinguish them on this point.

It was also proper for the Trial Court to submit to the jury the issue of whether average prudence required that some special protection be provided by the defendant at that crossing on that day in view of all the circumstances. This crossing was not protected in any way. It is located about 2,000 feet from the railroad station in Lancaster. Sand Street runs from Summer Street, one of the principal town streets, to six or seven occupied houses east of the track. It was a fairly busy street and crossing. The view of the rails approaching it was somewhat limited and obstructed to travelers coming from either side. There was about a ten per cent grade approaching from east or west. Some protection if needed could have been provided at no great inconvenience to the defendant. It is our opinion that it was for the jury, who also had a view of the scene and its surroundings (*Connors* v. *Turgeon,* 96 N. H. 479,

481), to say if special protection should have been provided (*Jones v. Railroad*, 83 N. H. 73, 75; *Cyr v. Railroad*, 88 N. H. 278, 281; *Whipple v. Railroad*, 90 N. H. 261, 270) especially if defendant was to operate its train over it at a speed four times above its customary speed and without giving the usual warning signals. *Carbone v. Railroad*, 89 N. H. 12, 15; *Ware v. Railroad*, 92 N. H. 373, 375; *Dahar v. Railroad*, 95 N. H. 464, 468.

The track was practically straight for a distance of 3,082 feet north of Sand Street. The decedent approached the crossing at about 3:41 P. M. at a rate of speed of approximately five miles per hour seated on the gas tank in the center of his stripped down model T Ford. When he was within 89 feet of the crossing he would be visible to both the engineer and fireman from a distance of 941 feet north of it and continually thereafter except that the engineer's view would be obstructed for a distance of 150 to 200 feet from the crossing. There was evidence that the fireman, who did not testify, was not on his seat or anywhere on the left side of the engine where he could have kept a lookout for travelers coming from the east. The engineer testified that the fireman was sitting on his seat and was doing his duty to look ahead and warn him if he saw anyone approaching whom he thought was in danger. He admitted, however, receiving no warning of any kind from him. The engineer himself did not see the decedent at any time before the collision. He did not know there had been an accident until he saw snow flying when the front of the engine was 50 to 200 feet south of the crossing when the brakes were thereafter applied for the first time. On that evidence the jury could find that this conduct constituted causal negligence on the part of defendant. *Jones v. Railroad*, 83 N. H. 73, 85; *Manseau v. Railroad*, 96 N. H. 7, 10; *Lamontagne v. Railway*, 97 N. H. 6, 8.

However, there was evidence on which the jury could find that the train was traveling at a speed of eight miles per hour with its bell ringing and its whistle blown four times between Causeway Street and Sand Street. If they so found and the decedent was approaching the crossing at a rate of speed of five miles per hour, the engineer could not see him because of the interference of the boiler of the engine with his view to the left. If the fireman was in his seat as the engineer testified he was, the jury could find that he could reasonably have assumed that decedent was going to stop before he reached the crossing until it was too late for him to notify the engineer in time to take saving action. *Gates v. Railroad*, 93

N. H. 179, 181. It was therefore error for the Court to charge the jury "as to the matter of a lookout on the part of the defendant, there is no evidence in the case that the defendant did, through its agents, either the engineer or fireman, maintain a proper lookout as the locomotive and train approached Sand Street crossing." Because of this error there must be a new trial.

The defendant argues that the evidence so clearly established the negligence of the decedent that the plaintiff should have been nonsuited or a verdict directed for the railroad. The chief basis of its argument is that Whiting had an unobstructed view to his right, from which direction the train was coming, at all times after he was within 89 feet of the crossing and that he did not look to his right at any time as he approached the crossing.

Although very important these facts are not necessarily fatal to plaintiff's claim. *Jones* v. *Railroad,* 83 N. H. 73, 80. The fact that more precaution on decedent's part would have prevented the accident does not necessarily defeat a recovery. *Byron* v. *Railroad,* 82 N. H. 434, 437. Our law does not adopt particular circumstances as the measure of due care but rather holds the actor only to the standard of care of the average prudent person under all the circumstances. *Smith* v. *Railroad,* 85 N. H. 463, 466. What would be proper conduct in one situation might be improper in another and vice versa. Hence no definite rule can be laid down. The facts of each case must be considered to see if the actor's conduct might reasonably be found to be that of a person of average prudence. *Byron* v. *Railroad, supra.*

Construing the evidence most favorably to the plaintiff the following conclusions could be arrived at. If this train was coming from his right, Whiting expected it to be traveling at about eight miles per hour and to sound four blasts from its whistle within a distance of 1,368 feet and to have its bell ringing continuously during that time. On its north bound journey, a short time before, he would not expect the bell to ring and probably no whistle to be blown. Sand Street is about ten feet wide with barely room for cars to pass each other going in opposite directions. Going toward the crossing from the east he could not see a motorist or other traveler approaching the crossing from the west until he was about 30 feet easterly of the crossing at which time the top of a car coming from the west would be visible. Small children had been and were sliding easterly from the crossing on Sand Street so as to require decedent's attention as he approached the crossing.

Whiting drove westerly on Sand Street on that day at about five miles per hour for a distance of 89 feet when he could have seen the train coming from his right. He looked to his left to detect the approach of a train, if any, from that direction whose bell would not be ringing and its whistle probably not sounded. He looked straight ahead to protect the children sliding in the street and to see any approaching motor vehicle whose presence would be detected late, because of the topography, and which he could pass only with some difficulty. During that time he did not look to his right relying entirely on hearing the whistle and the continuous ringing of its bell if a train was coming from that direction at about eight miles per hour (instead of 35 miles per hour as it could be found it did). We cannot say as a matter of law that reasonable men could not find that decedent exercised some care for his safety under the circumstances. *Hurlich* v. *Railroad,* 81 N. H. 286, 288. Whether it was due care is a question for the jury. *Dennis* v. *Railroad,* 94 N. H. 164, 165. *Manseau* v. *Railroad,* 96 N. H. 7, 11; *Lamontagne* v. *Railway,* 97 N. H. 6, 10.

The train's engineer, one Hodgdon, at the time of the accident had been in engine service on the railroad since 1907 operating this or similar types of locomotives. The Trial Court permitted him to be examined as to distances in which the train could be stopped at different speeds. This evidence was material on the issue of the rate of speed at which the train was going at the time of the accident. We cannot say that this was an abuse of discretion. *Flint* v. *Company,* 73 N. H. 483, 485; *Smith* v. *Railroad,* 88 N. H. 430, 435; *Avery* v. *Chapman,* 95 N. H. 350, 352.

Evidence of decedent's custom to slow down, look and listen when approaching a railroad crossing was admitted although there was direct evidence that he did not observe this custom as he approached the crossing on this day. See *Tucker* v. *Railroad,* 73 N. H. 132; *Minot* v. *Railroad,* 73 N. H. 317. Unlike *Whipple* v. *Railroad,* 90 N. H. 261, where the evidence of custom was admitted when the testimony of plaintiff's conduct contrary thereto came from defendant's own employees, the evidence to that effect in this case was from plaintiff's own eye-witness. The evidence of decedent's custom to listen could properly be admitted as tending to prove the contention that he was listening for warning signals from a train going southerly. *Buxton* v. *Langan,* 90 N. H. 13, 15. Evidence of his custom to look at other crossings could also be admitted as tending to prove decedent did not look to the right at this one because

he expected such warning. Evidence of his custom to slow down at railroad crossings, although inadmissible, was harmless to the defendant because this issue was not in controversy. *Spear* v. *Penna,* 92 N. H. 190. The Court's refusal to set aside the verdict implies a finding, in our opinion sustainable, that defendant was not prejudiced thereby. *Russell* v. *Stores,* 96 N. H. 471, 477.

The Court admitted the testimony of decedent's wife as to a conversation with her husband which took place in their home immediately before the accident. *H.* "Has the train gone"? *W.* "I think it has, but if it has I haven't heard it." *H.* "Then I will drive the Ford up to Summer Street and if the train hasn't gone I will hear it." It seems to us this evidence was admissible to show decedent's state of mind as he approached the crossing and was competent evidence tending to explain his conduct immediately preceding the collision. *Dane* v. *MacGregor,* 94 N. H. 294, 297. While this type of evidence could be subject to abuse we cannot say it was here so untrustworthy that it should have been excluded. *Hartford &c. Company* v. *Brenner,* 92 N. H. 503, 505.

We find no error in the exclusion of defendant's question to witness Hancock as to the distance the Public Service Commission has determined for the location of whistling posts. The Court excluded it because a statement was to be made to the jury that by statute or by any rule or regulation of the commission the defendant was not required to place a whistling post for the Sand Street crossing.

Evidence of the view north and south along the railroad to a traveler going easterly toward the crossing was properly received in the Court's discretion on the issue of the care decedent would have to exercise as regards cars coming toward him from the opposite direction. It was also proper to permit plaintiff to question the engineer as to his knowledge and understanding of the rules of the railroad on certain matters in issue without introducing the rules. See *Smith* v. *Railroad,* 87 N. H. 246, 259.

The defendant sought to ask Hodgdon the following question which he had asked him in his deposition: "It stands to reason that a train going thirty-five miles an hour you are going to take more than twenty-five feet to stop it over [the distance required to stop it at] eight miles an hour, doesn't it"? It was excluded. There was ample evidence that the witness took the position that his testimony as to stopping distances at speeds of more than eight miles an hour was just a guess on his part. The question could be considered argu-

mentative and the evidence was cumulative and properly excluded. *Marchand* v. *Company*, 95 N. H. 422, 423.

Defendant introduced in evidence a statement by witness Gonyer that he heard the train coming and thereafter decedent backed his car toward him and stalled it. On the stand Gonyer denied having heard the train and as bearing on that issue the Court allowed the plaintiff, over objection, to ask him what he would have done about Whiting had he known the train was approaching the crossing. He answered "I should have hollered to him if I had known." We see no error in this ruling.

It would serve no useful purpose to set out in detail questions relating to arguments of plaintiff's counsel as they are not likely to recur. Most of them pertain to inferences which could properly be made from the evidence. *United States Fidelity &c Co.* v. *Minault*, 96 N. H. 168, 172. However in commenting on defendant's argument that it had not introduced any evidence because it was clear Whiting was at fault, he argued in the following manner. "I suggest to you if that were found to be so you wouldn't be sitting here now listening to me arguing this case." This was argument of the sort criticized in *Whipple* v. *Railroad*, 90 N. H. 261, 264, and should be avoided on retrial.

*New trial.*

All concurred.