Grafton
No. 98-814

DAVID MACDONALD, ADMINISTRATOR OF THE ESTATE OF IAN MACDONALD

v.

DAVID BISHOP, M.D.

November 30, 2000

*Van Dorn, Cullenberg, Tensen & Curtiss*, of Orford (*Edward M. Van Dorn, Jr.* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman, P.C.*, of Concord (*Lawrence S. Smith* and *John T. Alexander* on the brief, and *Mr. Alexander* orally), for the defendant.

BRODERICK, J. The plaintiff, David MacDonald, administrator of the estate of Ian MacDonald, appeals from a jury verdict for the defendant, David Bishop, M.D., in the decedent's medical malpractice action. The plaintiff argues that the Superior Court (*Morrill*, J.) erroneously excluded testimony of the decedent's son and brother regarding statements he made to them about his medical condition. We affirm.

## I

The following facts were adduced at trial. In December 1993, Ian MacDonald (MacDonald), the decedent, noticed a sore on the right, rear portion of his tongue. In late December or early January, he observed a small, smooth spot on his tongue that was a different color than the rest of his tongue. In late January, he saw the defendant, who had been his treating physician for more than a decade. MacDonald told the defendant that he likely had an infected canker sore, which had persisted for several weeks and made it difficult for him to swallow. The defendant diagnosed a vitamin deficiency and recommended a multi-vitamin. He did not tell MacDonald that his tongue condition could be associated with cancer or that he had a high risk for developing oral cancer. The defendant testified that he advised MacDonald to contact him if his symptoms persisted and to consult with a dentist to determine whether his dentures were causing his problems. MacDonald, however, denied this.

During the following months, MacDonald's tongue pain resolved but was replaced with numbness. Because he was having difficulty swallowing and began slurring his speech, he sought the advice of a specialist in March 1995. The specialist discovered a lump in the exact area of MacDonald's tongue where he believed he had a canker sore. A biopsy was positive for cancer. Subsequently, a portion of MacDonald's tongue, along with lymph nodes in his neck, were removed. Following surgery, he underwent chemotherapy and radi-

ation therapy, which caused permanent side effects, including "leathery" neck muscles, difficulty swallowing, dry mouth, and complete elimination of the sense of taste.

MacDonald brought a medical malpractice action, alleging that the defendant failed to properly diagnose and treat him for the tongue condition that ultimately was diagnosed as cancer. The jury returned a verdict for the defendant, and this appeal followed.

## II

The plaintiff argues that the trial court erroneously excluded testimony from MacDonald's son and brother establishing that following his appointment with the defendant in January 1994, MacDonald told them that he had a vitamin deficiency and planned to take a multi-vitamin. The plaintiff argues that such testimony would have permitted the jury to infer that the defendant never told MacDonald that his tongue condition could be a precursor to cancer, that he should consult a dentist, or that he required any follow-up care. While MacDonald testified to what he told his brother, the plaintiff contends that the excluded testimony from the son and brother was critical corroborative evidence necessary to prove malpractice.

█ The plaintiff first argues that the excluded testimony was not hearsay under New Hampshire Rule of Evidence 801(c). This argument, however, was not contained in the plaintiff's notice of appeal and is, therefore, waived. *See* SUP. CT. R. 16(3)(b); *Unit Owners Assoc. of Summit Vista v. Miller*, 141 N.H. 39, 43, 677 A.2d 138, 141 (1996).

The plaintiff alternatively contends that the excluded testimony was admissible under the state of mind exception to the hearsay rule. *See* N.H. R. EV. 803(3). We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Simpson v. Wal-Mart Stores, Inc.*, 144 N.H. 571, 576, 744 A.2d 625, 629 (1999). We will not disturb a trial court's ruling unless it is "clearly untenable or unreasonable to the prejudice of [the plaintiff's] case." *Id.*

Rule 803(3) provides that hearsay may be admitted if it is "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." To be admissible under this exception, "[t]he declaration must concern the mental state of the declarant and have reference

to the time at which the declaration was made." *Clooney v. Clooney*, 118 N.H. 754, 756, 394 A.2d 313, 315 (1978) (decision based on common law).

■■ MacDonald sought to introduce statements he purportedly made to his son and brother about his physical condition immediately following his January 1994 examination to prove what the defendant told him or failed to tell him. The state of mind exception, however, only permits a litigant to use an out-of-court statement to prove the state of mind or subsequent conduct of the *declarant* when such facts are at issue. *See* N.H. R. EV. 803 Reporter's Notes; *Clooney*, 118 N.H. at 756, 394 A.2d at 315 (basing decision upon common law rule regarding use of statements to prove mental state); *Fissette v. Railroad*, 98 N.H. 136, 143, 96 A.2d 303, 307 (1953) (same regarding subsequent conduct). Because MacDonald was not offering the challenged testimony to prove his state of mind, but rather to establish the conduct of another, the trial court did not abuse its discretion by excluding it.

### III

The plaintiff also asserts that the trial court erred by not permitting the son to testify about other statements MacDonald made to him in the months following his January 1994 visit with the defendant. He contends that these statements were admissible under Rule 803(3) and challenges two trial court rulings that excluded them during the son's direct examination. Specifically, MacDonald's counsel was twice foreclosed from asking the son about his father's description of changes to his tongue condition.

■ The plaintiff contends that evidence of the changing condition of MacDonald's tongue during the several months following the January 1994 office visit was necessary to rebut the defendant's position that he did not breach the standard of care because the tongue condition resolved itself after MacDonald took multi-vitamins. According to the plaintiff, "if the jury believed the defense position that the symptoms resolved, [it] could believe that the vitamins were appropriate therapy and that the standard of care [was not] breached." In essence, the plaintiff argues that the testimony of the son was critical to show that MacDonald's symptoms did not resolve before March 1995 when the tongue cancer was diagnosed. The defendant disputes the plaintiff's characterization of his defense, contending that "[h]is defense was simply that the examination in January 1994 met the applicable standard of care."

Even if we assume the plaintiff properly characterized the defense theory, the record contained ample evidence to rebut it, and therefore, we need not reach the question of whether the challenged testimony should have been allowed.

During his direct examination, MacDonald explained that in the several months following the January 1994 appointment, his tongue soreness was replaced with numbness that remained "through 1994 and into 1995." The son testified that his father told him in early 1995 that "[t]he numbness that he had been experiencing since early fall had . . . gotten worse and was starting to affect his speech." The brother testified that while taking multi-vitamins, MacDonald told him that the sore area on his tongue became numb. He also testified that in March 1995, he was told by MacDonald that the numbness was getting worse.

The plaintiff contends that the testimony of MacDonald's son and brother was insufficient to rebut the multi-vitamin defense theory. Specifically, he argues that the son would have offered testimony that MacDonald had noticed changes in his tongue condition in the months *immediately following* the January 1994 office visit. Apparently, he sought to rely on the son's testimony to supplement MacDonald's own account. A fair reading of the record establishes that MacDonald's son testified that his father complained of tongue numbness in the early fall of 1994 and that it was ongoing and worsening. MacDonald's brother corroborated the complaints. According to the plaintiff, the defendant asserted, as a defense, that the multi-vitamin regime he prescribed cured MacDonald's condition before he was independently examined in March 1995. We conclude that even without the son's proposed testimony, the jury had ample evidence before it to decide whether MacDonald's symptoms resolved prior to March 1995 and, thus, could fairly determine whether multi-vitamins cured his tongue complaints. Accordingly, there is no discernible prejudice to the plaintiff's case as a result of the trial court's evidentiary rulings.

*Affirmed.*

BROCK, C.J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.