## SCOTT *v.* SIMONS.

A landlord who negligently constructs his premises, or, when they become defective, negligently suffers them to remain so, is liable to his tenant or a stranger who being himself free from fault is injured thereby.

There is no implied warranty on the part of a landlord of leased premises that they shall be fit for use.

There is no implied contract on the part of a landlord of leased premises that he will keep them in repair.

CASE, by Scott & Jewell against Hiram Simons and others.

The substance of the declaration, so far as it relates to questions considered in the opinion of the court, is, that, on July 8, 1870, the defendants were the owners of Mercantile block, situated on the corner of Concord and Elm streets in Manchester, and on that day the plaintiffs, by an agreement with the defendants, in consideration of $21 per month, to be paid monthly in advance as rent, became the rightful and legal occupants of a certain cellar in the basement of said block, to be occupied by them as a grocery store and meat shop as tenants at will, and entered into possession thereof, and ought to have remained in the peaceful and quiet occupation of said premises free from molestation or interruption ; yet the defendants, by means of a certain drain leading from said block to the city sewer, which drain, by reason of its improper and defective construction, having no gate or other apparatus to prevent the water from the common sewer from flowing back through said drain into the cellar occupied by the plaintiffs, and by reason of said drain through the negligence and carelessness of the defendants being

suffered to remain so imperfect, defective, and insufficient as aforesaid, on the fourth, nineteenth, and twenty-third days of August, 1871, caused the water from said sewer, without the fault or negligence of the plaintiffs, to flow back through said drain into said cellar, and overflowed the same, and flooded, damaged, and destroyed the goods and chattels of the plaintiffs in said cellar.

By consent of the parties the case was tried by the court upon the general issue, and the judge reported the following facts, and reserved the question whether the defendants are liable for all or any of the injuries complained of : The plaintiffs hired the cellar of the defendants, who were the owners of the block containing it, called Mercantile block, situated on the corner of Concord and Elm streets, in Manchester, and moved their goods into it July 8, 1870, and removed from it August 24, 1871, in consequence of the water flowing into it and damaging their goods. They paid rent monthly in advance. There is a sewer under Concord street which runs into the main sewer under Elm street. The defendants, in 1867, rebuilt the buildings, and constructed a drain of cement pipes in the ordinary way of constructing such drains, from the cellar wall, under the sidewalk and street, into the Concord street sewer. A sink was set in the cellar, near the end of the drain, and a lead pipe, designed to carry off waste water, ran from the sink through the cellar wall into the drain. Sometimes, in high water, previous to the occupancy of the plaintiffs, the sewers had been full, and the water had run back through the drain and pipe into the sink, and the defendants had provided a plug to be inserted in the end of the pipe at such times, which had prevented further difficulty from the water. There was no gate or other apparatus, except said plug, to prevent the water from flowing from the sewer through the drain and pipe into the cellar. When the plaintiffs took possession, they were told of this liability of the water to flow back through the drain and pipe into the cellar, and how to prevent it by the use of the plug. This was all the danger the defendants then knew of, or had any reason to expect. The plaintiffs did as they were directed, and were in no fault on their part. On the fourth day of August, 1870, there was a shower of rain, during which the quantity of water that fell was greater than the capacity of the public sewers to receive and conduct away, in consequence of which the water was thrown back from the Concord street sewer into the drain with such force that a breach was caused near the cellar, and the water flowed out and forced its way to and through the wall into the cellar, and damaged the plaintiffs' goods. They immediately notified the defendants, and requested them to repair the breach so as to prevent further damage ; but nothing was done. There came another shower on the 19th, and still another on the 23d of the same month, upon each of which days the water flowed back into the cellar in the same manner as before, and damaged the plaintiffs' goods ; whereupon they abandoned the premises.

*Briggs & Huse,* for the plaintiffs.

The relation of landlord and tenant, which subsisted between the defendants and the plaintiffs, does not relieve the defendants from their liability to answer for the injuries occasioned by their own wrongful acts.

The plaintiffs had contracted with the defendants for the use and occupation of this cellar for a grocery store, and had paid the defendants in advance the sum which they demanded for the same, and were entitled to the quiet and beneficial enjoyment of the premises. The defendants had erected the building to rent, and they were bound to employ reasonable skill and diligence in such erection, regard being had to the purposes for which it was to be used. The plaintiffs had a right to act upon the presumption that the defendants had safely constructed the premises.

The defective and illegal construction of the appurtenances to said premises were facts within the knowledge of the defendants, which the plaintiffs could not have known, unless such information was given them by the lessors, which was withheld. They let the cellar for a purpose for which they knew it was unfitted, by reason of the defective condition of the sewer, and they cannot avoid liability for the consequences on the ground that the party, whom they have injured by their negligent, wrongful, and illegal acts, was their tenant, and they had a legal right thus to imperil and destroy his property.

There are numerous decisions establishing the doctrine that any interference, in fact or effect, which renders the premises useless, in consequence of which the tenant is compelled to abandon them (as the case finds to be the case in the present instance), may be set up in defence against a recovery of rent, and the same doctrine must render the lessor liable for the damage which thus ensues to the lessee.

They have exacted and received their rent-money in advance, and have permitted the plaintiffs to expose their valuable and destructible goods to the injuries which were liable to result from the improperly constructed sewer; and, as Lord ABINGER wisely remarks, in *Smith* v. *Marrable*, 11 M. & W. 5 (41 E. C. L. 263), " it is plain, good common sense, that, if a man lets a house, it shall be fit for the purposes of occupation."

The plaintiffs also cite *Godley* v. *Hagerty*, 20 Pa. St. 387 ; *Clarke* v. *Spaulding*, 20 N. H. 316 ; *Nelson* v. *Godfrey*, 12 Ill. 20 ; *Salisbury* v. *Marshall*, 4 C. & P. 65 (19 E. C. L. 275) ; *Edwards* v. *Hetherington*, 7 D. & R. 117 (16 E. C. L. 271) ; *Cowie* v. *Goodwin*, 9 C. & P. 378 (38 E. C. L. 162) ; *Collins* v. *Barrow*, 1 Moo. & R. 112 ; *Edgerton* v. *Page*, 20 N. Y. 281.

*Morrison & Stanley*, for the defendants.

This action cannot be maintained. The plaintiffs were tenants at will from month to month. There was no written lease. There was no covenant, express or implied on the part of the defendants, that the premises were fit for habitation or use. Smith's L. & T. (ed. of 1856)

262; Taylor's L. & T., sec. 381; *Dutton* v. *Gerrish*, 9 Cush. 89; *Foster* v. *Peyser*, *ib.* 242; *Welles* v. *Castles*, 3 Gray 326; *Leavitt* v. *Fletcher*, 10 Allen 121; *Cleves* v. *Willoughby*, 7 Hill 83; *Sutton* v. *Temple*, 12 M. & W. 52; *Hart* v. *Windsor*, *ib.* 68.   The plaintiffs took the premises as they found them, under no obligation to remain, and with no agreement or covenant that they were fit for the purposes for which they were hired.

It cannot be claimed that there was any fraud, concealment, or negligence on the part of the defendants, for the case finds that the attention of the plaintiffs was called to the sewer.   They were informed that the water sometimes flowed back from the sewer into the sink, and that a plug had been provided to insert in the sink pipe to prevent the water from flowing back.

The case also finds that this was all the danger the defendants had any reason to apprehend; that the branch sewer leading from the main sewer was properly constructed; that the falls of rain on the 4th of August and on the 19th and 23d, the times when the injuries complained of were done, were so sudden and so great that the capacity of the sewers was not sufficient to receive and conduct it away, and that the streets were flooded, and the water was thrown back into the branch sewer with such force as to make a breach in it, causing the water to flow through the ground into the cellar and do the damage complained of.

The damage caused to the plaintiffs was occasioned by no act or omission of the defendants.   It all arose from the insufficiency of the city sewer to discharge the water rushing into it in times of sudden and severe showers.   We say, then, that upon these facts it is clear that there was no fraud, concealment, or negligence on the part of the defendants, and they clearly cannot be held liable.

HIBBARD, J.   I. The plaintiffs in this case claim to recover damages occasioned through the negligence of the defendants in improperly constructing a drain upon premises leased by the plaintiffs of the defendants, and in suffering it to remain defective.   If, by reason of the faulty construction of the drain by the defendants, the plaintiffs, without fault on their part, were injured, the defendants are liable. *Alston* v. *Grant*, 3 El. and Bl. 128 (77 E. C. L. 127).   And it has been held that this is equally so where the party injured is a stranger.   *Payne* v. *Rogers*, 2 H. Bl. 350; *Godley* v. *Hagerty*, 20 Pa. St. 387; *Reeves* v. *Larkin*, 19 Mo. 192.   For negligently suffering the drain to remain defective, after notice that it had become so, there would be a similar liability. *Church of the Ascension* v. *Buckhart*, 3 Hill 193.   But the judge before whom the case was tried not having found that the defendants were guilty of negligence in constructing the drain, or in not repairing it, nor, as we think, that they were not guilty of negligence in either or both of those respects, we can neither hold that they are liable nor that they are not liable, by reason of any actual evidence on their part, either in constructing the drain, or in not repairing it.   If, therefore,

the plaintiffs are not entitled to recover upon any other ground, there must be a new trial for the purpose of determining the question whether there was any want of ordinary care on the part of the defendants in not providing a suitable gate, or other apparatus, to prevent the flow of water from the sewer into the drain, or in not repairing the breach within a reasonable time after they had notice of it, or for any other reason.

II. But the plaintiffs say that though the defendants might, by reason of not being actually in fault, be exempt from liability for such an injury to a stranger, they must be held liable in this action by virtue of the relation of landlord and tenant existing between the parties. But what obligation did that relation impose on the defendants ? The plaintiffs might have declined to occupy the premises unless the defendants would expressly covenant that they were suitable for use ; but they saw fit to enter and occupy without any express covenants. There are, it is true, respectable authorities which hold that where premises are let for the purposes of occupation, there is an implied condition that they shall be fit for use—*Smith* v. *Marrable*, 11 M. & W. 5 (41 E. C. L. 263), *Edwards* v. *Hetherington*, 7 D. & R. 117 (16 E. C. L. 271), *Collins* v. *Barrow*, 1 Moo. & R. 112, *Salisbury* v. *Marshall*, 4 C. & P. 65 (19 E. C. L. 275), *Cowie* v. *Goodwin*, 9 C. & P. 378 (38 E. C. L. 162), *Gilhooley* v. *Washington*, 4 N. Y. 217 ; but the weight of authority is decidedly the other way. Smith's L. & T. (ed. of 1856) 262 and note ; Woodfall's L. & T. (10th ed.) 493 ; Taylor's L. & T., sec. 381 ; 1 Pars. on Cont. (5th ed.) 589 ; 1 Washb. R. P. (3d ed.) 473 ; *Sutton* v. *Temple*, 12 M. & W. 52 ; *Hart* v. *Windsor*, *ib.* 68 ; *Chappell* v. *Gregory*, 34 Beav. 250 ; *Carstairs* v. *Taylor*, L. R., 6 Exch. 217 ; *Cleves* v. *Willoughby*, 7 Hill 83 ; *Dutton* v. *Gerrish*, 9 Cush. 89 ; *Foster* v. *Peyser*, *ib.* 242 ; *Royce* v. *Guggenheim*, 106 Mass. 202 ; *Elliott* v. *Aiken*, 45 N. H. 36. It is very clear upon the authorities that the defendants, in the absence of proof of actual fault on their part, are not liable in this action by virtue of any implied warranty that the plaintiffs' goods should not be injured by the bursting of a drain pipe.

The defendants might be liable to their tenants, or to strangers, for subsequent injuries, if, after notice of the breach, they were negligent in not repairing it ; but we think not to one who, being aware of the defect, unnecessarily exposed his goods to injury by it. The judge finds that the plaintiffs " immediately notified the defendants, and requested them to repair the breach so as to prevent further damage ; but nothing further was done." He does not find, as we understand his report of the facts, whether the plaintiffs were in fault for allowing their goods to remain in an exposed situation, as we think they would be if the defendants, on being notified, refused to make the necessary repairs. If the defendants on receiving this notice promised to repair the breach immediately, that might justify the plaintiffs in continuing to occupy the premises, and render the defendants liable for the subsequent injuries. Otherwise, it must be held that the plaintiffs allowed their goods to remain there at their peril, unless, by the relation

of landlord and tenant, there was a duty imposed on the defendants to repair the defect in the drain on receiving notice of it.

III. But as there was no express contract, so it is well settled that none can be implied by law, on the part of the defendants, to keep the leased premises in repair.  Smith's L. & T. (ed. of 1856) 262 ; Taylor's L. & T. (6th ed.), secs. 327–331 ; Woodfall's L. & T. (10th ed.) 493 ; *Howard* v. *Doolittle*, 3 Duer 464 ; *Alston* v. *Grant*, 3 El. & Bl. 127 ; *Leavitt* v. *Fletcher*, 10 Allen 121 ; *Elliott* v. *Aiken*, 45 N. H. 36 ; *Brewster* v. *DeFremery*, 33 Cal. 341 ; *Doupe* v. *Genin*, 45 N. Y. 119.

In *Brewster* v. *DeFremery*, the plaintiff's intestate was lessee of the defendant : in consequence of excavations by an adjoining owner, a wall upon the leased premises became insecure : the defendant was notified to protect it, but did nothing, and the wall fell and killed the intestate and injured his property.  In *Doupe* v. *Genin*, the roof upon the leased premises was burned : rain came, and ran through the rooms of other tenants of the defendant down to the rooms occupied by the plaintiff, and did damage.  In each case it was held that there was no liability on the part of the landlord.

But if a landlord knows of a defect and conceals it from his tenant, he is liable for the consequences.  Taylor's L. & T. (6th ed.) 294, note ; 1 Pars. on Cont. (6th ed.) 501.  Ordinarily, the tenant is not exempted from the payment of rent by proof that the premises were or have become unfit for occupation—*Howard* v. *Doolittle*, 3 Duer 464 ; but where the lessor was guilty of acts that precluded the lessee from a beneficial enjoyment of the premises, in consequence of which he abandoned the possession before the rent became due, it was held that this was a virtual expulsion, and that the lessor's action for the recovery of the rent was barred.  *Dyett* v. *Pendleton*, 8 Cow. 728 ; *Edgerton* v. *Page*, 20 N. Y. 283 ; *Royce* v. *Guggenheim*, 106 Mass. 201.

For the purpose previously stated of determining whether the defendants were actually in fault in the construction of the drain, or for not repairing it, there must be

*A new trial.*