Merrimack,
No. 5541.

L. WILDER QUINT, *Adm'r*

*v.*

KONSTANTINIS PORIETIS.

Argued November 2, 1966.
Decided December 20, 1966.

McLane, Carleton, Graf, Greene & Brown and G. Peter Guenther ( Mr. Guenther orally ), for the plaintiff.

Wiggin, Nourie, Sundeen, Nassikas & Pingree and William S. Orcutt ( Mr. Orcutt orally ), for the defendant.

DUNCAN, J. When this fatal collision occurred the plaintiff's intestate a resident of Concord, was driving his automobile southerly to West Roxbury, Massachusetts, while the defendant, a resident of Toronto, Canada, who had traveled to Concord on the preceding day, was driving southerly with his wife and children to Jamaica Plain, Massachusetts. He overtook the decedent south of Manchester as he approached the Bedford exit of the Everett Turnpike. The accident occurred at about 8:30 A. M. on a bright clear day. The southbound lane consisted of a travel lane and a passing lane having a total width of twenty-five feet, and an emergency lane some twelve feet in width. The collision occurred in the travel lane, about opposite the Bedford exit, which is approximately midway of a straight stretch at least eight-tenths of a mile in length. The front of the defendant's automobile struck the rear of the decedent's vehicle.

The decedent never regained consciousness following the collision, and the only eyewitnesses were the defendant and his wife. The defendant testified that he was looking at one of the directional signs, and that after he passed it, he " turned my eyes back on the road and I see a car ahead of me either standing or backing up or moving very, very slow ahead, which I could not tell because it was too close. " He estimated the distance between the vehicles when he first saw the decedent's car as thirty to forty feet. His wife estimated it at fifty feet. He testified that he tried to swerve but did not succeed. He estimated his own speed at sixty miles an hour, when he first saw the car ahead.

A State Trooper who arrived at the scene shortly after the collision testified that he determined that " both [drivers were] going straight ahead, southbound " in the travel lane, although he agreed on cross-examination that it was a " fair assumption that [the decedent] was confused and was stopping, or backing,

trying to make up his mind" because the signs at that time were confusing to some travelers.

The plaintiff contends that the Trial Court erred in submitting to the jury the issues of contributory negligence and statutory violations by the plaintiff, erred in instructing the jury with respect to these issues, in particular with regard to the burden of proof of contributory negligence, and erred in permitting the jury to consider the emergency doctrine in determining whether the defendant was negligent.

From the testimony of the defendant and his wife, the jury could reasonably find that when the collision occurred the plaintiff was virtually motionless in the southbound travel lane of a high-speed, limited-access highway. Whether his vehicle was standing still, or moving slowly, either ahead or backward, was not a decisive factor. His conduct was findably negligent in the light of the nature of the travel upon the highway, with which he was generally familiar. Both common-law principles and statutory regulations dictate the conclusion that in the absence of breakdown or other emergency, of which there is no evidence in this case, a motorist incurs unreasonable risks if he travels upon such a highway at a speed which is materially below the permitted and normal speed of other traffic thereon. "It may be said that negligence is conduct involving an unreasonable risk of injury to others . . . and hence it is plain that the nature and extent of its expectable consequences determine whether or not an act is negligent." *Flynn* v. *Gordon*, 86 N. H. 198, 201. "If there is some probability of harm sufficiently serious that ordinary men would take precaution to avoid it, then failure to do so is negligence." *Tullgren* v. *Company*, 82 N. H. 268, 276. The decedent's common-law duty to maintain a lookout extended to traffic approaching from the rear, as well as to traffic moving in other directions. It is our opinion that there was evidence from which the jury could find that the decedent was negligent ( Restatement ( Second ), Torts, *s.* 466 ), and that his conduct was findably a substantial factor in producing the harm which occurred. *Maxfield* v. *Maxfield*, 102 N. H. 101, 105.

The Trial Court properly considered that certain statutory provisions were applicable upon the issue of the decedent's fault, and laid them before the jury with appropriate instructions to determine whether the decedent had violated them. These provisions were little more than codification of common-law

principles of negligence. One of them was RSA 263:50, which was read to the jury in the following form, which omitted certain exceptions specified by the statute: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway outside of a business or residence district or compact section."

The plaintiff maintains that there was no evidence of a violation of this provision because "the language clearly implies something more than a mere momentary stop." The contention is foreclosed by the decision of this court in *Fontaine* v. *Charas*, 87 N. H. 424, where the phrase "leave standing any vehicle whether attended or unattended," was construed "to make illegal any voluntary stopping of a vehicle on the highway for any length of time . . . long or short, except, of course, such stops as the exigencies of traffic may require." *Id.*, 426.

While we note that this section of the statute was amended in 1963, effective more than a month prior to the happening of this accident ( Laws 1963, 330:2, now RSA 262-A:70 ), the plaintiff has not relied upon this circumstance as a ground for his exception. The amended statute in effect adopts the holding of the *Fontaine* case, *supra*, by making it unlawful to "stop" a vehicle on the traveled way, as well as to "park or leave [it] standing" there.

The second statute which the Trial Court submitted for the consideration of the jury was that found in RSA 263:55: "No person shall drive a motor vehicle at such slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." This provision of the law was likewise amended by Laws 1963, 330:2, in respects not material to this case. The pertinent provision of the amended statute ( RSA 262-A: 57 I ) remains unchanged, except for omission of the words "or block" which were not essential to application of the statute to this case.

The plaintiff argues that the issue of whether the decedent was at fault because of violation of this statute was erroneously submitted to the jury because "even if stopped" he "did not impede or block any flow of traffic." The argument is that he "could not because there was no flow of traffic."

This interpretation of the statute cannot be adopted. In the first place, the statute is not phrased in terms of "flow of traffic,"

which suggests the presence of a continuous stream of vehicles. The conduct prohibited by both the original and the amended version of the statute is driving "at such a slow speed as to impede the normal and reasonable *movement* of traffic." RSA 262-A:57 I. (Emphasis supplied). We consider that the word "traffic" is here used in the sense of the "passage to and fro of vehicles along the highway" rather than in the sense of a steady or congested flow of vehicles. Similar statutes elsewhere have been interpreted not to imply a requirement that more than two vehicles be involved. See 2 Blashfield, Automobile Law and Procedure (3d *ed.*) s. 105.5. A contention similar to that advanced by the plaintiff was rejected in *Lafferty* v. *Wattle*, (Mo. App.) 349 S. W. 2d 519.

As applied to a highway of the type here involved, the statute takes on added significance, because as was observed in *Angell* v. *Hester*, 186 Kan. 43, 50: "A vehicle being operated at a subnormal speed may very well create a hazard upon a highway designed and customarily used to carry fast-moving traffic . . . . " See also, *Seaton* v. *Spence*, 215 Cal. App. 2d 761, 766-767; Annot. 66 A.L.R. 2d 1194.

We conclude that the issue of the plaintiff's contributory fault, at common law and under the statutes, was properly submitted to the jury.

There must be a new trial, however, because of error in the instructions pertaining to the burden of proof on the issue of contributory negligence. The plaintiff excepted "to the charge as given in that the Court on two occasions charged the jury that in order to return a verdict for the plaintiff the jury must believe the plaintiff to have been free from fault, which is not the law. We do not have the burden of proof on that."

In preliminary instructions, the Court stated the claims of the parties in general terms, advising the jury that "the defendant maintains that he was not negligent as such, and that he himself was free from fault for the accident and . . . that the plaintiff himself was not free from fault, but that his fault caused this particular accident." With respect to burden of proof the charge continued: "In this action, gentlemen, the burden of proof is on the party that brought the proceeding, namely Mr. Lemeris' administrator . . . the burden is theirs to establish their case by a fair preponderance of the evidence . . . that it is a little more likely than otherwise that his contentions are correct . . . . "

Using the "analogy of the scales of justice," the charge told the jury that "if the scales are evenly distributed, or . . . tip ever so slightly in favor of defendant, you . . . should conclude . . . that the plaintiff has not sustained his burden of proof . . . . "

After discussing standards by which testimony should be judged, and defining negligence with particular reference to the defendant's conduct, the instructions charged the jury that the plaintiff's decedent's conduct was to be judged by like standards and that if that conduct caused or helped to cause the accident, the plaintiff could not recover.

Instructions were next given on the emergency doctrine, and the charge then returned to the burden of proof "in regard to whether the defendant was negligent." The charge continued: "Now gentlemen, further still before you can return a verdict in this matter for the plaintiff, you must also find that the plaintiff himself was free from fault. Now when we say free from fault, we in effect mean free from any negligent conduct on his part or in his behalf . . . The burden of proof in regard to whether the plaintiff, Mr. Lemeris, in this particular proceeding was negligent. That burden rests with the defendant. Now, you should take note of that, because the burden in this instance does shift from the plaintiff to the defendant. In other words, when you attempt to determine whether or not the plaintiff was free from fault, which of course you must find before you can return a verdict for the plaintiff, you must measure the evidence as such, based on the proposition that the defendant has the burden of proving to you that the plaintiff himself was not free from fault and was guilty of negligence as such . . . You must further find . . . that the plaintiff's negligence . . . helped or contributed to the accident . . . and in this particular regard the burden of proof rests with the defendant to convince you that it is a little more probable than otherwise that the plaintiff was negligent and that this negligence caused or contributed . . . to cause the accident in question." After exceptions to the charge had been taken, the Court instructed the jury that the defendant had the burden of proving causal violation of statute by the plaintiff.

Shortly after the jury retired, the foreman sent a written question to the Court as follows: "Could you send us a copy of this law relating to the plaintiff's contribution to this accident?" The matter of additional instructions was discussed with counsel and in the course of the discussion, counsel for the plaintiff stated: "Of course

in the absence of evidence on a charge that says they must find the plaintiff free from fault, you place the jury in an impossible situation because of the absence of evidence . . . without any indication that if they were unable to determine whether or not the plaintiff was at fault . . . the verdict is for the plaintiff. "

The Court thereafter prepared supplemental instructions, which were submitted to counsel before they were given. Plaintiff's counsel excepted to them because " the jury is not even now being instructed that in the event they are unable to resolve this issue, whether for lack of evidence or because of conflict in . . . evidence . . . that in that event, if they have also found the defendant . . . negligent, their verdict should be for the plaintiff . . . They need not find us free from fault. We are entitled to a verdict . . . unless they find . . . on the evidence . . . that we are contributorily negligent. "

The supplemental instructions were thereupon given in the form in which they were submitted to counsel. They commenced with this statement: " First off . . . regardless of the fault or negligence of the defendant, in order for the plaintiff to prevail he himself must be free from fault for the accident itself. " The instructions then discussed negligence on the part of the decedent, reviewed the statutes which it was claimed he had violated, and causation, and concluded: " These are all issues, gentlemen, on which the burden of proof is on the defendant . . . In order to find the plaintiff is to blame . . . you must believe it is a little more probable than otherwise that the plaintiff was to blame . . . that some lack of due care on the part of the plaintiff caused or helped to cause the accident. "

In death cases, the question of the burden of proof of contributory negligence on the part of the decedent takes on special significance. See *Jones* v. *Railroad*, 83 N. H. 73, 78. RSA 507:8. " The statutory shifting of the burden of proof . . . greatly improved the position of the plaintiffs in cases of this character. Under the present law no evidence as to the care of the deceased is necessary as a part of a plaintiff's case . . . . " *Jones* v. *Railroad, supra,* 78.

A bald statement that the defendant " has the burden of proof " of this issue will convey little meaning to a layman in the absence of further elaboration or illustrative application. In this case, while the plaintiff's burden of establishing the defendant's negligence was adequately covered by the charge, the jury was

never told in explanation of the defendant's burden of establishing contributory negligence, that unless the decedent was shown to be at fault, his administrator was entitled to recover if the defendant was negligent. On the contrary, the jury was told that it must find the plaintiff "free from fault" before the plaintiff could recover.

This was wrong since the plaintiff was entitled to a verdict if the jury found only that the decedent's fault had not been established. Other instructions upon the burden of proof, including those given in answer to the jury's question, did not purport to withdraw the erroneous instructions, and were inadequate to correct them.

Since an erroneous conception of the law may have been conveyed to the jury, and the plaintiff's exception clearly called this to the Court's attention ( *West* v. *Railroad*, 81 N. H. 522, 533 ), the exception must be sustained. *Mullins* v. *Company*, 91 N. H. 402, 405, and cases cited; *O'Haire* v. *Breton*, 102 N. H. 448, 452.

The plaintiff excepted to submission of the emergency doctrine, as applied to the defendant's conduct. In view of the defendant's testimony that he did not see the Lemeris car until he was forty feet from it, because "the sun was just rising and it was shining very low right in the eyes," the emergency doctrine was properly invoked. The instructions given adequately informed the jury that it was inapplicable if the defendant "created or helped to create the emergency through his own fault." This was the gist of the plaintiff's third request for instructions, and his exceptions relating to the emergency doctrine are overruled.

*Exceptions sustained in part and overruled in part; new trial.*

All concurred.