CARROLL WIGGIN, *Adm'r & a.*

*v.*

KENT McCRAY OF DOVER, INC. *& a.*

Argued February 5, 1969.
Decided April 30, 1969.

*Burns, Bryant, Hinchey & Nadeau* and *Paul R. Cox* (*Mr. Cox* orally), for the plaintiffs.

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly* (*Mr. Kelly* orally), for the defendant Kent McCray of Dover, Inc.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Shane Devine* orally), for the defendant Dover Shopping Plaza, Inc.

PER CURIAM. The accident happened on December 18, 1963, when the plaintiff Blanche Wiggin, who had been shopping in the store of the defendant Kent McCray, attempted to exit through the automatic door. She testified that at first it stuck, then when she stamped upon the mat, it began to open. Before she could get out, it closed and locked, pinning her against the frame. She endeavored unsuccessfully to open it. Suddenly the mat and door began to shake and then the door swung violently open, striking her on the head and hurling her out onto the sidewalk, fracturing her left shoulder and hip and causing her to be "all black and blue."

We first consider the plaintiffs' exception to the nonsuit

granted to the defendant Dover Shopping Plaza. The issue here is whether there was evidence to sustain a finding that this defendant breached any duty which it owed to the plaintiff. *Cote* v. *Litawa,* 96 N. H. 174, 176; *Gossler* v. *Miller,* 107 N. H. 303, 305. This in turn depends on whether the Shopping Plaza had the right to control, or maintained or exercised any control, over the automatic door. *Black* v. *Fiandaca,* 98 N. H. 33, 35; *Paine* v. *Hampton Beach &c. Co.,* 98 N. H. 359, 364. The basis of the plaintiffs' claim was that the malfunctioning of the door, which was electrically activated and hydraulically operated, was caused by lack of due maintenance. They claimed that the door, and especially the area of the mat in front of the door, was not properly serviced or maintained and was not kept clean. The result was that dirt worked under and between the layers of the mat, resulting in the door's erratic and improper operation. The plaintiffs' expert so testified. No expert testimony was presented to contradict this opinion as to the cause of the accident.

The transcript is barren of evidence that the defendant Dover Shopping Plaza ever maintained or exercised any control over the door, nor was there any testimony that it ever received any complaints about the door or requests to inspect, repair or maintain it prior to the accident. Nor did it have any knowledge before December 18, 1963, that the door was not operating properly. The plaintiffs' argument that it was admitted at the pretrial that the plaintiff was an "invitee" of this defendant at the time of the accident is not sustainable. The relevant part of the pretrial order reads as follows: "2. Kent McCray at the time operated a store selling goods to the general public and Blanche Wiggin was on the premises as a business invitee." This obviously means an invitee of the defendant Kent McCray and not the defendant Plaza. The fact that the Plaza owned the shopping area where the store and a bowling alley were located, and to which it is claimed that this defendant invited patrons, does not help the plaintiffs' cause. The offending door was not used in common with the entrances to, or the exits from the bowling alley. Thus such cases as *Frear* v. *Company,* 83 N. H. 64 and *Manning* v. *Company,* 90 N. H. 167, relied upon by the plaintiff, are inapposite.

The plaintiffs' position that the lease from Plaza to McCray gave rise to obligations on the part of Plaza to the plaintiffs

also is not sustainable. The pertinent portions of this involved and lengthy document read as follows:

"7(A). Tenant agrees that it will make all repairs and alterations to the property which tenant is required to maintain, as hereinafter set forth, which may be necessary to maintain the same in as good repair and condition as the same are in at the commencement of the term of this lease except for structural defects . . . . The property which Tenant is required to maintain is the interior of the demised premises, including without limitation, the heating and air-conditioning systems, *all doors* . . . ." (Emphasis supplied.)

"(B) . . . . The property which Landlord is required to maintain is the foundation, the roof, the exterior walls, the marquee, if any, and the structural parts of the demised premises, and all common areas and common facilities of the Shopping Center, and, to the extent not included in the foregoing, all utilities conduits, fixtures and equipment serving the demised premises and other premises in the Shopping Center in common and located within the Shopping Center, including, but without limitation, sub-floors, window frames *but excluding all plate glass and doors* except if caused by Landlord's agents, servants or employees . . . ." (Emphasis supplied)

"(C). Notwithstanding anything herein contained to the contrary it shall be the obligation of Landlord to make all repairs and alterations (other than those required as a result of fault or negligence of Tenant or any sub-tenant or concessionaire of Tenant or the agents of any of them or as the result of repairs, alterations, other improvements or installations made by Tenant or any sub-tenant or concessionaire of Tenant or the agents of any of them) to the property which Tenant is required to maintain which may become necessary *during the first full calendar year* after the completion of landlord's construction work . . . ." (Emphasis supplied.)

The Trial Court ruled that under this lease the control and the duty to maintain the door rested with the defendant Kent McCray. It is axiomatic that the final interpretation of all written instruments is for this court. *Pettee* v. *Chapter,* 86 N. H. 419; *Aldrich* v. *Beauregard & Sons,* 105 N. H. 330, 336. As we interpret the lease, responsibility for the maintenance of the door was that of the tenant, Kent McCray, which was also charged with any repairs of the door which might be required,

except for a limited period at the commencement of the term, during which the landlord Dover Shopping Plaza agreed to make "repairs and alterations." This undertaking by the landlord however, placed it under no responsibility to the plaintiffs, so that the question of whether the date of the accident fell within the "first . . . . calendar year" is immaterial. *Busick* v. *Corporation*, 91 N. H. 257; *Hunkins* v. *Company*, 86 N. H. 356. The motion of Dover Shopping Plaza Inc. for a nonsuit was properly granted.

We next examine the defendant Kent McCray's statement: "The basic error in the trial of this case is the admission into evidence of occurrences after December 18, 1963, the date of the accident." The brunt of this defendant's attack focuses upon testimony of Frank Smith, the plaintiffs' expert who examined the door upon July 1, 1966. In addition to this inspection, he had before him at the trial a picture of the door produced by the defendant, taken on the day of the accident. Theodore Kaufman, president of Kent McCray at the time of the accident, testified without exception that he had been familiar with the door from the time of the opening of the store in October 1962 up to the time of the trial which began October 31, 1967, and that it remained "in the same condition."

Smith gave as his opinion that the door had malfunctioned because the mat which was stepped upon, which should have activated the electric system, and which in turn set the hydraulic machinery in motion, had been improperly maintained and serviced. This, he said, allowed dirt to work into the layers of the mat and under it. The result was that the door worked in "the same intermittent or erratic manner as reported by decedent Mrs. Wiggin at the date of the accident." He also stated: "I see evidence of dust and dirt, it looks, in the picture here." Again, in referring to the picture, he testified: "The mat does not appear, and the surroundings, do not appear clean to me."

He found "dead spots" on the mat, and during his examination the door closed on him on one occasion and opened and struck him on another. This was the same experience which the plaintiff had on the day of the accident and to which she had testified before Smith took the stand.

Although there were some contradictions, which were for the jury to resolve (*Giguere* v. *Railroad*, 86 N. H. 294, 298), there

was ample evidence to sustain a finding that the door had not been properly serviced, maintained, or inspected prior to the accident. Also, as indicated above, the record permitted the jury to find the condition of the door and mats on the date of the expert's examination were the same as upon the day of the accident. Smith's opinion therefore was properly founded. *Higgins* v. *Carroll,* 86 N. H. 312, 315; 7 N. H. B. J. 363, 365.

The Trial Court's determination that Smith's testimony would aid the jury in its search for truth is sustainable. *Ricker* v. *Mathews,* 94 N. H. 313, 317; *Cormier* v. *Conduff,* 109 N. H. 19. Questions of remoteness were also for the Trial Court, and we find no abuse of discretion on the facts of this case. *Paisner* v. *Renaud,* 102 N. H. 27, 31.

We have examined the testimony of other witnesses which the defendant complains was erroneously received. At the time of the introduction of the evidence, it was made apparent to the jury that the testimony was limited to the issue of control, and in some instances to the credibility of the defendent's witnesses. The transcript discloses that most of this evidence was received on the issue of who had control of the door at the time of the accident. As such, it was competent. *Panagoulis* v. *Company,* 95 N. H. 524, 525; *Bixby* v. *Thurber,* 80 N. H. 411, 417; 7 N. H. B. J. 267, 270. In instances where it bore upon the credibility of certain witnesses it was also properly received. *Reynolds* v. *Company,* 81 N. H. 421, 425; 7 N. H. B. J. 267, 270.

The defendant's objections, except for raising the question of remoteness, were general; they requested no limitation of the evidence, as they might have done, and no cautionary instructions. In these circumstances, the defendant takes nothing by its exceptions. *Welch* v. *Coleman,* 95 N. H. 399, 404; *Cobb* v. *Follansbee,* 79 N. H. 205, 210-211.

The defendant further urges that the introduction of the Pittsburgh Glass pamphlets relating to the proper maintenance and operation of the door and mat was error. The reason given is that this material influenced the jury to apply a higher standard of care than our law requires and practically made Kent McCray an "insurer" of the safety of the plaintiff Blanche Wiggin. At the time these brochures were admitted, Pittsburgh Glass, which manufactured and installed the door, but had no obligation to service it, was a defendant. The Court allowed

the evidence to be introduced solely because the expert said his opinion was based on information in the pamphlets, as well as on his own knowledge. The degree to which the documents furnished a rational basis for the expert's opinion went to the weight of the evidence, rather than its admissibility. See *Armstrong* v. *Lake Tarleton Hotel,* 103 N. H. 450.

The defendant's objection to introduction of the pamphlets was general and directed no one's attention to the point now urged. No cautionary instructions were requested. It has long been the law here that an issue not raised at the trial will not be considered by this court. *United States F. & G. Co.* v. *Kancer,* 108 N. H. 450, 453; *Fitch Company* v. *Insurance Company,* 99 N. H. 1.

Furthermore, the jury was correctly instructed as to the test for determining negligence. The defendant's exception is overruled. *Dowling* v. *Shattuck,* 91 N. H. 234, 237.

The defendant Kent McCray's contention that the verdicts were excessive will not bear analysis. The plaintiff Blanche Wiggin, age sixty-four had a life expectancy of 13.9 years when the accident happened. She suffered a broken left hip, a broken left shoulder, a severe blow on the head, and was made "all black and blue." There was evidence that she had suffered from arthritis for a long time previous to the accident and had broken her right hip in 1954. There was also evidence that before she was injured in 1963 her arthritis was under control, and that she had made an excellent recovery from the previous hip injury. She testified that she had attended church and club meetings regularly, drove a car without difficulty, did all her own housework, and felt "wonderful" before this accident. As she put it: "Anything I wanted to do, I could do."

Her misfortune at the defendant's store radically changed the pleasant and even tenor of her life. After suffering four months in the hospital, where she endured what she described as "torture," she came home. There she was forced to remain most of the time until she died of pneumonia at age sixty-eight.

Following the accident she had to be held up in order to get about even in a very limited way. She could not go out alone and had to be lifted into a car. Her shoulder motion was so restricted that she could not comb her hair. Her hip motion was also permanently limited, and her underlying arthritis, well controlled before the accident, flared up, adding substantially to

her discomfort and disabilities. She testified at the trial: "I always have pain." The defendant introduced no medical evidence, and any conflicts in the doctor's testimony were for the jury to resolve. *Davis* v. *Nees,* 100 N. H. 144; *Giguere* v. *Railroad,* 86 N. H. 294, 298.

On the record before us, it cannot be said as a matter of law that the $35,000 verdict in the suit by the administrator was "manifestly exorbitant; and so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice or have been misled by some mistaken views of the merits of the case." *Hanlon* v. *Pomeroy,* 102 N. H. 407, 409. This is particularly true at a time when the reduced value of the dollar is a matter of universal concern. *Gauthier* v. *Bergeron,* 107 N. H. 153, 156. The defendant's exception on the ground that the verdict for the administrator was excessive cannot be sustained.

The award of $22,000 to the plaintiff Carroll Wiggin is also sustained. His special damages were $3,418.21. His wife who had been capable of caring for his home and his comfort, became an invalid whom the jury could find would remain crippled for the balance of her life expectancy of approximately fourteen years. The Trial Court's denial of the motion to set aside the verdicts of both plaintiffs is entitled to substantial weight. *Richards* v. *Crocker,* 108 N. H. 377, 380. The defendant's exceptions to denial of its motions to set aside both verdicts as excessive are overruled. *Lavoie* v. *Blake,* 106 N. H. 347, 349.

*Exceptions overruled; judgment on the verdicts.*

LAMPRON, J., was absent.