Hillsborough
No. 6338

TINA SARGENT,
ADMINISTRATRIX OF THE ESTATE OF ANNA M. SARGENT

v.

FABIOLA ROSS

July 31, 1973

*Leonard & Harkaway* and *Leonard P. Shapiro (Mr. Shapiro* orally) for the plaintiff.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *William S. Orcutt (Mr. Orcutt* orally) for the defendant.

KENISON, C.J. The question in this case is whether the defendant landlord is liable to the plaintiff in tort for the death of plaintiff's four-year-old daughter who fell to her

death from an outdoor stairway at a residential building owned by the defendant in Nashua. The defendant resided in a ground floor apartment in the building, and her son and daughter-in-law occupied a second story apartment serviced by the stairway from which the child fell. At the time of the accident the child was under the care of the defendant's daughter-in-law who was plaintiff's regular baby-sitter.

Plaintiff brought suit against the daughter-in-law for negligent supervision and against the defendant for negligent construction and maintenance of the stairway which was added to the building by the defendant about eight years before the accident. There was no apparent cause for the fall except for evidence that the stairs were dangerously steep, and that the railing was insufficient to prevent the child from falling over the side. The jury returned a verdict for the daughter-in-law but found in favor of the plaintiff in her action against the defendant landlord. The defendant seasonably excepted to the denial of her motions for a nonsuit, directed verdict, judgment n.o.v., and to have the verdict set aside, and all questions of law were reserved and transferred to this court by *Dunfey*, J.

Claiming that there was no evidence that the defendant retained control over the stairway, that it was used in common with other tenants, or that it contained a concealed defect, defendant urges that there was accordingly no duty owing to the deceased child for the defendant to breach. This contention rests upon the general rule which has long obtained in this and most other jurisdictions that a landlord is not liable, except in certain limited situations, for injuries caused by defective or dangerous conditions in the leased premises. *E.g., Black v. Fiandaca,* 98 N.H. 33, 93 A.2d 663 (1953); *Towne v. Thompson,* 68 N.H. 317, 44 A. 492 (1895); 2 R. Powell, Real Property para. 234 (rev. ed. 1971); W. Prosser, Torts §63 (4th ed. 1971); 1 H. Tiffany, Real Property §§ 104, 107 (3d ed. 1939). The plaintiff does not directly attack this rule of nonliability but instead attempts to show, rather futilely under the facts, defendant's control of the stairway. She also relies upon an exception to the general rule of nonliability, to wit, that a landlord is liable for injuries resulting from his negligent repair of the premises. *Hunkins v. Amoskeag*

*Mfg. Co.,* 86 N.H. 356, 169 A. 3 (1933); *Rowan v. Amoskeag Mfg. Co.,* 79 N.H. 409, 109 A. 561 (1920); W. Prosser, *supra* at 410-12; 1 H. Tiffany, *supra* § 105; Restatement (Second) of Torts § 362 (1965). The issue, as framed by the parties, is whether the rule of nonliability should prevail or whether the facts of this case can be squeezed into the negligent repair or some other exception to the general rule of landlord immunity.

General principles of tort law ordinarily impose liability upon persons for injuries caused by their failure to exercise reasonable care under all the circumstances. *Fitzpatrick v. Public Serv. Co.,* 101 N.H. 35, 131 A.2d 634 (1957); *Fissette v. Boston & Maine R.R.,* 98 N.H. 136, 96 A.2d 303 (1953); Restatement (Second) of Torts § 283 (1964). A person is generally negligent for exposing another to an unreasonable risk of harm which foreseeably results in an injury. *Quint v. Porietis,* 107 N.H. 463, 225 A.2d 179 (1966); *State v. Dodge,* 103 N.H. 131, 166 A.2d 467 (1960); Restatement (Second) of Torts § 282 (1965). But, except in certain instances, landlords are immune from these simple rules of reasonable conduct which govern other persons in their daily activities. This "quasi-sovereignty of the landowner" (2 F. Harper and F. James, Law of Torts 1495 (1956)) finds its source in an agrarian England of the dark ages. *Kline v. Burns,* 111 N.H. 87, 276 A.2d 248 (1971); *Clarke v. O'Connor,* 435 F.2d 104, 111 (D.C. Cir. 1970); Harkrider, *Tort Liability of a Landlord,* 26 Mich. L. Rev. 260, 261 (1928). Due to the untoward favoritism of the law for landlords, it has been justly stated that "the law in this area is a scandal." Quinn and Phillips, *The Law of Landlord-Tenant: A Critical Evaluation of the Past with Guidelines for the Future,* 38 Ford. L. Rev. 225 (1969). "For decades the courts persistently refused to pierce the hardened wax that preserved the landlord-tenant relationship in its agrarian state." Note, 59 Geo. L.J. 1153, 1163 (1971). But courts and legislatures alike are beginning to reevaluate the rigid rules of landlord-tenant law in light of current needs and principles of law from related areas. *See Kline v. Burns supra; Lemle v. Breeden,* 51 Hawaii 426, 462 P.2d 470 (1969); *Kline v. 1500 Massachusetts Ave. Apt. Corp.,* 439 F.2d 477 (D.C. Cir. 1970); 2 R. Powell, Real Property para. 220, at 174-75

(rev. ed. 1971); 1970/71 Annual Survey of American Law 365; Note, 121 U. Pa. L. Rev. 378 (1972). "Justifiable dissatisfaction with the rule" of landlord tort immunity (2 F. Harper and F. James, *supra* at 1510) compels its reevaluation in a case such as this where we are asked either to apply the rule, and hold the landlord harmless for a foreseeable death resulting from an act of negligence, or to broaden one of the existing exceptions and hence perpetuate an artificial and illogical rule. *See* Note, *Lessor's Duty to Repair: Tort Liability to Persons Injured on the Premises,* 62 Harv. L. Rev. 669 (1949).

One court recognized at an early date that ordinary principles of tort liability ought to apply to landlords as other persons. "The ground of liability upon the part of a landlord when he demises dangerous property has nothing special to do with the relation of landlord and tenant. It is the ordinary case of liability for personal misfeasance, which runs through all the relations of individuals to each other." *Wilcox v. Hines,* 100 Tenn. 538, 548-49, 46 S.W. 297, 299 (1898). Most courts, however, while recognizing from an early date that "the law is unusually strict in exempting the landlord from liability" *(Bowe v. Hunking,* 135 Mass. 380, 386 (1883)), sought refuge from the rigors of the rule by straining other legal principles such as deceit *(Cummings v. Prater,* 95 Ariz. 20, 23 n.1, 386 P.2d 27, 29 n.1 (1963); Note, *Landlord and Tenant: Defects Existing at the Time of the Lease,* 35 Ind. L.J. 361 (1960)) and by carving out exceptions to the general rule of nonliability. 2 F. Harper and F. James, *supra* at 1510. Thus, a landlord is now generally conceded to be liable in tort for injuries resulting from defective and dangerous conditions in the premises if the injury is attributable to (1) a hidden danger in the premises of which the landlord but not the tenant is aware, (2) premises leased for public use, (3) premises retained under the landlord's control, such as common stairways, or (4) premises negligently repaired by the landlord. *See generally* 2 R. Powell, Real Property para. 234 (rev. ed. 1971); W. Prosser, Torts §63 (4th ed. 1971); Restatement (Second) of Torts §§ 358-62 (1965).

As is to be expected where exceptions to a rule of law form the only basis of liability, the parties in this action concentrated at trial and on appeal on whether any of the excep-

tions applied, particularly whether the landlord or the tenant had control of the stairway. 1 H. Tiffany, Real Property § 109 (3d ed. 1939). The determination of the question of which party had control of the defective part of the premises causing the injury has generally been considered dispositive of the landlord's liability. *E.g., Black v. Fiandaca,* 98 N.H. 33, 93 A.2d 663 (1953); *Flanders v. New Hampshire Sav. Bank,* 90 N.H. 285, 7 A.2d 233 (1939). This was a logical modification to the rule of nonliability since ordinarily a landlord can reasonably be expected to maintain the property and guard against injuries only in common areas and other areas under his control. A landlord, for example, cannot fairly be held responsible in most instances for an injury arising out of the tenant's negligent maintenance of the leased premises. *Manning v. Leavitt Co.,* 90 N.H. 167, 5 A.2d 667 (1939). But the control test is insufficient since it substitutes a facile and conclusive test for a reasoned consideration of whether due care was exercised under all the circumstances. *See Clark v. O'Connor,* 435 F.2d 104, 111-13 (D.C. Cir. 1970).

There was evidence from which the jury could find that the landlord negligently designed or constructed a stairway which was dangerously steep or that she negligently failed to remedy or adequately warn the deceased of the danger. A proper rule of law would not preclude recovery in such a case by a person foreseeably injured by a dangerous hazard solely because the stairs serviced one apartment instead of two. But that would be the result if the control test were applied to this case, since this was not a "common stairway" or otherwise under the landlord's control. *See generally* Annot., 26 A.L.R.2d 468 (1952). While we could strain this test to the limits and find control in the landlord *(Gibson v. Hoppman,* 108 Conn. 401, 143 A. 635 (1928)), as plaintiff suggests, we are not inclined to so expand the fiction since we agree that "it is no part of the general law of negligence to exonerate a defendant simply because the condition attributable to his negligence has passed beyond his control before it causes injury . . . ." 2 F. Harper and F. James, Law of Torts § 27.16, at 1509 (1956); *see id.* at 207 (Supp. 1968).

The anomaly of the general rule of landlord tort immunity and the inflexibility of the standard exceptions, such as the

control exception, is pointedly demonstrated by this case. A child is killed by a dangerous condition of the premises. Both husband and wife tenants testify that they could do nothing to remedy the defect because they did not own the house nor have authority to alter the defect. But the landlord claims that she should not be liable because the stairs were not under her control. Both of these contentions are premised on the theory that the other party should be responsible. So the orthodox analysis would leave us with neither landlord nor tenant responsible for dangerous conditions on the premises. This would be both illogical and intolerable, particularly since neither party then would have any legal reason to remedy or take precautionary measures with respect to dangerous conditions. In fact, the traditional "control" rule actually discourages a landlord from remedying a dangerous condition since his repairs may be evidence of his control. *Hunkins v. Amoskeag Mfg. Co.,* 86 N.H. 356, 169 A. 3 (1933); see *Flanders v. New Hampshire Sav. Bank,* 90 N.H. 285, 7 A.2d 233 (1939). Nor can there be serious doubt that ordinarily the landlord is best able to remedy dangerous conditions, particularly where a substantial alteration is required. *See Kline v. Burns,* 111 N.H. 87, 276 A.2d 248 (1971); Note, 62 Harv. L. Rev. 669 (1949).

In *Wiggin v. Kent McCray, Inc.,* 109 N.H. 342, 252 A.2d 418 (1969), which involved an injury from a defective door in a shopping center, we considered the control question but analyzed the problem in ordinary negligence terms. In fact, the issue of control is relevant to the determination of liability only insofar as it bears on the question of what the landlord and tenant reasonably should have believed in regard to the division of responsibility for *maintaining* the premises in a safe condition. The basic claim in this case involves only the design or construction of the steps; the maintenance of the stairs was not seriously in issue, except perhaps concerning the lack of precautions, since the evidence was clear that the stairway was dry and free of debris. The inquiry should have centered upon the unreasonableness of the pitch of the steps and the unreasonableness of failing to take precautionary measures to reduce the danger of falls.

Similarly, the truly pertinent questions involved in deter-

mining who should bear responsibility for the loss in this case were clouded by the question of whether the accident was caused by a hidden defect or secret danger. *E.g., Clark v. Sharpe,* 76 N.H. 446, 83 A. 1090 (1912). The mere fact that a condition is open and obvious, as was the steepness of the steps in this case, does not preclude it from being unreasonably dangerous, and defendants are not infrequently "held liable for creating or maintaining a perfectly obvious danger of which plaintiffs are fully aware." 2 F. Harper and F. James, *supra* at 1493; *Williamson v. Derry Elec. Co.,* 89 N.H. 216, 196 A. 265 (1938) (slippery floor); *Cummings v. Prater,* 95 Ariz. 20, 386 P.2d 27 (1963). Additionally, while the dangerous quality of the steps might have been obvious to an adult, the danger and risk would very likely be imperceptible to a young child such as the deceased. *See Dorais v. Paquin,* 113 N.H. 187, 304 A.2d 369 (1973). The obviousness of the risk is primarily relevant to the basic issue of a plaintiff's contributory negligence. *See Williamson v. Derry Elec. Co. supra.* Here, the trial court properly withdrew the issue of the contributory negligence of the deceased from the jury because of the child's very young age. *See Dorais v. Paquin supra.*

Finally, plaintiff's reliance on the negligent repairs exception to the rule of nonliability (*Hunkins v. Amoskeag Mfg. Co.,* 86 N.H. 356, 169 A. 3 (1933)) would require us to broaden the exception to include the negligent construction of improvements to the premises. We recognize that this would be no great leap in logic (*see* Bohlen, *Landlord and Tenant,* 35 Harv. L. Rev. 633, 648 (1922)), but we think it more realistic instead to consider reversing the general rule of nonliability (Note, 62 Harv. L. Rev. 669 (1949)) since "[t]he exceptions have . . . produced a twisting of legal concepts which seems undesirable." *Id.* at 676. And "it appears to us that to search for gaps and exceptions in a legal doctrine . . . which exists only because of the somnolence of the common law and the courts is to perpetuate further judicial fictions when preferable alternatives exist. . . . The law of landlord-tenant relations cannot be so frail as to shatter when confronted with modern urban realities and a frank appraisal of the underlying issues." *Lemle v. Breeden,* 51 Hawaii 426,

435-36, 462 P.2d 470, 475 (1969) (establishing an implied warranty of habitability in dwelling leases). The emphasis on control and other exceptions to the rule of nonliability, both at trial and on appeal, unduly complicated the jury's task and diverted effort and attention from the central issue of the unreasonableness of the risk.

In recent years, immunities from tort liability affording "special protection in some types of relationships have been steadily giving way" in this and other jurisdictions. 2 F. Harper and F. James, *supra* at 1508; *see Hurley v. Town of Hudson,* 112 N.H. 365, 296 A.2d 905 (1972) (sovereign tort immunity disapproved); *Dean v. Smith,* 106 N.H. 314, 211 A.2d 410 (1965) and *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966) (parental tort immunity abolished); *Derby v. Public Serv. Co.,* 100 N.H. 53, 119 A.2d 335 (1955) (real estate vendor's immunity discarded and ordinary negligence principles applied) (*see* Annot., 48 A.L.R.3d 1027, 1039 (1973)); *Welch v. Frisbie Memorial Hosp.,* 90 N.H. 337, 9 A.2d 761 (1939) (charitable tort immunity not adopted); *Gilman v. Gilman,* 78 N.H. 4, 95 A. 657 (1915) (husband's tort immunity from wife declared abolished by married woman's act). "Considerations of human safety within an urban community dictate that the landowner's relative immunity, which is primarily supported by values of the agrarian past, be modified in favor of negligence principles of landowner liability." Recent Development, *Abrogation of Common-Law Entrant Classes of Trespasser, Licensee, and Invitee,* 25 Vand. L. Rev. 623, 640 (1972). "In modern times the immunities have rightly, though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it." *Taylor v. New Jersey Highway Auth.,* 22 N.J. 454, 463, 126 A.2d 313, 317 (1956). We think that now is the time for the landlord's limited tort immunity to be relegated to the history books where it more properly belongs.

This conclusion springs naturally and inexorably from our recent decision in *Kline v. Burns,* 111 N.H. 87, 276 A.2d 248 (1971). *Kline* was an apartment rental claim suit in which the tenant claimed that the premises were uninhabitable. Fol-

lowing a small vanguard of other jurisdictions, we modernized the landlord-tenant contractual relationship by holding that there is an implied warranty of habitability in an apartment lease transaction. As a necessary predicate to our decision, we discarded from landlord-tenant law "that obnoxious legal cliche, *caveat emptor." Pines v. Perssion,* 14 Wis. 2d 590, 596, 111 N.W.2d 409, 413 (1961). In so doing, we discarded the very legal foundation and justification for the landlord's immunity in tort for injuries to the tenant or third persons. *See Marston v. Andler,* 80 N.H. 564, 122 A. 329 (1923); *Clark v. Sharpe,* 76 N.H. 446, 83 A. 1090 (1912); *Wilcox v. Hines,* 100 Tenn. 538, 46 S.W. 297 (1898); Comment, 45 N.Y.U.L. Rev. 943, 951 n.54 (1970); Notes, 62 Harv. L. Rev. 669 (1949); 35 Ind. L.J. 361 (1960). "Judicial discarding of the sale concept [and, hence, of *caveat emptor*] would leave the courts with an easy recourse to established principles of law; the lessor would fall within the general proposition underlying many areas of tort law that he who owns or is in a position to control or is responsible for things or persons has the duty to prevent their harming others. And the large body of negligence principles which have developed in other fields would bound this duty." Note, 62 Harv. L. Rev. 669, 678-79 (1949).

To the extent that *Kline v. Burns* did not do so, we today discard the rule of "caveat lessee" and the doctrine of landlord nonliability in tort to which it gave birth. We thus bring up to date the other half of landlord-tenant law. Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm. *Scott v. Simons,* 54 N.H. 426 (1874); *Wilcox v. Hines,* 100 Tenn. 538, 46 S.W. 297 (1898); *see Cummings v. Prater,* 95 Ariz. 20, 386 P.2d 27 (1963); *Presson v. Mountain States Properties, Inc.,* 18 Ariz. App. 176, 501 P.2d 17 (1972); Harkrider, *Tort Liability of a Landlord,* 26 Mich. L. Rev. 260 (1928). A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk. *See Quint v. Porietis,* 107 N.H. 463, 225 A.2d 179 (1966); *Flynn v. Gordon,* 86 N.H. 198, 165 A.715 (1933); *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97, 100

(D.C. Cir. 1972); *Conway v. O'Brien*, 111 F.2d 611, 612 (2d Cir. 1940) (L. Hand, J.). *See generally* Note, 121 U. Pa. L. Rev. 378 (1972). We think this basic principle of responsibility for landlords as for others "best expresses the principles of justice and reasonableness upon which our law of torts is founded." *Dowd v. Portsmouth Hosp.*, 105 N.H. 53, 59, 193 A.2d 788, 792 (1963) (on rehearing). The questions of control, hidden defects and common or public use, which formerly had to be established as a prerequisite to even considering the negligence of a landlord, will now be relevant only inasmuch as they bear on the basic tort issues such as the foreseeability and unreasonableness of the particular risk of harm. *Cf. Clark v. O'Connor*, 435 F.2d 104, 111-13 (D.C. Cir. 1970). The Massachusetts Supreme Judicial Court recently made the following pertinent remarks in a case abolishing the distinction in the standards of care owed by land occupiers to licensees and invitees: "In the absence of legislative action, we believe that this 'reasonable care in all the circumstances' standard will provide the most effective way to achieve an allocation of the costs of human injury which conforms to present community values." *Mounsey v. Ellard*, 297 N.E.2d 43, 52 (Mass. 1973).

The abiding respect of this court for precedent and stability in the law is balanced by an appreciation of the need for responsible growth and change in rules that have failed to keep pace with modern developments in social and juridical thought. When we abolished the tort immunity of a parent from suit by his child, another artificial and inequitable exception to the general rules of tort liability, we made the following observation which is equally pertinent to this case: "If after thorough examination a prior judicial decision seems manifestly out of accord with modern conditions of life, it should not be followed as a controlling precedent. 37 Harv. L. Rev. 409, 414. Finding no supportable rationale upon which this judicially created exception to the ordinary rules of liability can be predicated, justice demands and reason dictates that a change be made from the previous holding in such a situation." *Dean v. Smith*, 106 N.H. 314, 318, 211 A.2d 410, 413 (1965); *see In re Frolich Estate*, 112 N.H. 320, 295 A.2d 448 (1972).

Our decision will shift the primary focus of inquiry for judge and jury from the traditional question of "Who had control?" to a determination of whether the landlord, and the injured party, exercised due care under all the circumstances. Perhaps even more significantly, the ordinary negligence standard should help insure that a landlord will take whatever precautions are reasonably necessary under the circumstances to reduce the likelihood of injuries from defects in his property. "It is appropriate that the landlord who will retain ownership of the premises and any permanent improvements should bear the cost of repairs necessary to make the premises safe . . . ." *Kline v. Burns,* 111 N.H. 87, 92, 276 A.2d 248, 251 (1971).

Although the trial court's instructions to the jury in the instant case were cast according to the traditional exceptions of control and hidden danger, the charge clearly set forth the elements of ordinary negligence which were presented by the court as a prerequisite to a finding of liability on either issue. Thus, the jury could find that the defendant was negligent in the design or construction of the steep stairway or in failing to take adequate precautionary measures to reduce the risk of injury. We have carefully reviewed the record and conclude that there is sufficient evidence, on the basis of the principles set forth above, to support the verdict of the jury which had the benefit of a view. *See Vezina v. Amoskeag Realty Co.,* 110 N.H. 66, 260 A.2d 115 (1969); *Manning v. Freeman,* 105 N.H. 272, 198 A.2d 14 (1964); *Dowd v. Portsmouth Hosp.,* 105 N.H. 53, 193 A.2d 788 (1963); *Blados v. Blados,* 151 Conn. 391, 198 A.2d 213 (1964). Both plaintiff and the wife tenant testified that the stairs were too steep, and the husband tenant testified that his wife complained to him of this fact. While the defendant landlord did not testify, the jury could find that she knew that this steep stairway was frequently used by the young children for whom her daughter-in-law was the regular, daily baby-sitter. In any event, the use of these steps by young children should have been anticipated by the defendant. *Saad v. Papageorge,* 82 N.H. 294, 133 A. 24 (1926); *see Manning v. Freeman,* 105 N.H. 272, 198 A.2d 14 (1964).

The verdict of the jury is sustained, and the order is

*Exceptions overruled; judgment on the verdict.*

GRIMES, J., did not participate; DUNCAN, J., concurred in the result; the others concurred.