Rockingham
No. 6776

LINTON HAMPTON

v.

FRANK A. DAVIS, JR., and JAMES L. DELANEY

JAMES L. DELANEY

v.

FRANK A. DAVIS, JR.

October 31, 1974

*Shaines, Madrigan & McEachern (Mr. Robert A. Shaines* orally) for Linton Hampton.

*Augustine J. McDonough,* by brief and orally, for Frank A. Davis, Jr.

*Charles F. Hartnett,* by brief and orally, for James L. Delaney.

LAMPRON, J. Actions for damages resulting from an accident in Portsmouth at or about midnight of June 13-14, 1969, involving three automobiles traveling north on the Spaulding Turnpike. In the course of trial the jury was dismissed and the trial continued by agreement of the parties before the Presiding Justice, *Morris,* J. The court rendered a verdict in the sum of $48,351 for the plaintiff Linton Hampton against defendants Frank A. Davis, Jr., and James L. Delaney. A verdict for the defendant was returned in the action of James L. Delaney against Frank A. Davis, Jr. Verdicts in other actions resulting from the accident are not involved in this appeal. Delaney's bill of exceptions to the rulings of the court on the admission and exclusion of evidence, and to the findings, rulings and verdicts rendered were transferred.

The Spaulding Turnpike is a divided highway with three northerly lanes, a breakdown lane, a travel lane, and a passing lane adjacent to a median strip. The three cars involved in the collision were proceeding on the highway in this order: the car operated by Sidney Mackey was the most northerly; the car driven by James L. Delaney, with his wife Margaret as a passenger, followed; and the car operated by Frank Davis, Jr., with Linton Hampton and another as passengers, was behind.

The trial court made the following written findings: "Shortly before midnight, a Volkswagen had overturned on the northerly artery of the Spaulding Turnpike in the vicinity of the Brady Ford Garage. Passersby were engaged in attempting to right the Volkswagen. One automobile had been driven on to the median strip facing toward the Portsmouth traffic circle (to the south), and its four-way flashers had been activated. There was testimony that a trailer truck in the northerly artery also had its flashers in operation. One man had left the scene of the Volkswagen accident with a flashlight to go toward the Portsmouth traffic circle ... waving his arms.

"Just prior to the collision, the Mackey vehicle was in the travel lane of the highway approaching the Brady Ford area. Just prior to the collision, the Delaney vehicle was in the process of passing the Mackey vehicle. The Davis vehicle approached the Delaney vehicle and collided with it. The right front portion of the Davis vehicle struck the left rear portion of the Delaney vehicle. There was evidence that the Delaney vehicle went into a spin and that it was struck a second time on its right rear door section."

After granting and denying certain requests for findings and rulings made by the parties, the court continued: "On all the evidence and on the above findings and rulings, the Court finds and rules that it is more probable than otherwise that the driver James L. Delaney and the driver Frank A. Davis, Jr. each was negligent in the lookout he kept and in the speed at which he traveled and in the manner of his operation of his motor vehicle in approaching the scene of the overturned Volkswagen with at least two motor vehicles with four-way flashers in operation; and the Court further finds and rules that their lack of due care was causal of the collision."

Delaney's first contention is that he was entitled to a directed verdict as plaintiff in his action against Davis, and to a similar verdict as defendant in the action of Hampton against him and Davis. According to the evidence, Mackey preceded Delaney and Davis on the Spaulding Turnpike northerly from the Portsmouth traffic circle to the scene of the accident which was about half a mile south of the

main gate of Pease Air Force Base. Mackey testified that he passed a car after he left the circle, returned to the driving lane, and stayed there until he saw a man crossing the highway waving his hands back and forth. Thinking "there was something the matter", Mackey slowed down, went to the breakdown lane, passed around him and returned to the driving lane. Sometime thereafter he heard "'a big crash' and I looked in the rear view mirror, and . . . saw a car half in the driving lane, half in the passing lane. Then it hit me, and it spun around and passed me in reverse." This turned out to be the Delaney car and the "big crash" which preceded was a collision between the right front portion of the Davis car and the left rear portion of the Delaney vehicle.

Delaney testified that he was in the passing lane as he left the traffic circle. Shortly thereafter a car behind him flashed his lights and Delaney went to the driving lane to permit him to pass. Delaney continued in that lane at just under 60 miles per hour. Later he moved to the passing lane as he was closing in on the Mackey car. He thereafter observed the Mackey auto slow down and Delaney took his foot off the gas and saw a pedestrian run "from in front of the Mackey car across the path of my car from right to left." He applied his brakes and then observed this pedestrian on the median strip with his hands raised "and his eyes opened wide while he looked someplace down the road toward the rotary". He had a "wild look in his eyes looking back in the direction from which I had come." Delaney then "released the brake, rolled past him, then accelerated." He could see about 800 to 1,000 feet back toward the traffic circle at this point. Delaney testified that he had been proceeding in the passing lane from five to eight seconds before he saw the pedestrian. During that time he never looked in his side or rear mirrors to determine if there was traffic behind him. He testified he thereafter traveled another three seconds before he was struck by the Davis car and during that time he did not look in his mirrors.

Davis testified that he entered the Spaulding Turnpike at the circle and went into the driving lane. When he came upon a car, which was the Delaney vehicle, in front of him in that lane he went into the passing lane. He had been

there a few seconds and was about three to five feet from the car he was going to pass when: "All of a sudden, it just swerved out into my lane, and I applied the brake, I tried to stop, and I tried to cut to my left in order to avoid hitting the car, but I was unable to".

The evidence was conflicting especially as to whether Delaney had been in the passing lane for some time or swerved into it suddenly as Davis was about to pass him. The trial court granted Delaney's request No. 17 that he did not swerve suddenly, and denied Davis' requests Nos. 13 and 16 claiming that he did. By a cross-matching of various requests of the parties granted or denied by the trial court, Delaney argues that there was no evidentiary basis on which causal fault on his part could be found. These deal for the most part with the conflicting testimony which was presented. It was within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. *Wilson v. LeGrice,* 113 N.H. 485, 309 A.2d 646 (1973). The court was not compelled to accept testimony of Davis or Hampton about which they could be mistaken. *Griffin v. Therriault,* 107 N.H. 411, 416, 223 A.2d 655, 658-59 (1966); *Jones v. Jones,* 113 N.H. 553, 554, 311 A.2d 522, 524 (1973).

Delaney was under a duty to maintain a lookout for traffic approaching from the rear as well as for traffic moving in other directions. *Quint v. Porietis,* 107 N.H. 463, 465, 225 A.2d 179, 182 (1966); 60A C.J.S. *Motor Vehicles* § 287 (1969). He was also under duty to observe and give consideration to factors which would indicate to a driver of average prudence the need for caution in the operation of his motor vehicle at that particular time. *Id.* § 284 (1). We hold that the evidence warranted the trial court's finding and ruling that Delaney was guilty of negligence which caused or contributed to cause the accident. We hold also that this conclusion could be reached without reliance on evidence which Delaney claims was contrary to indisputable physical facts. *See Lavigne v. Nelson,* 91 N.H. 304, 308, 18 A.2d 832, 834 (1941). We hold further, that contrary to Delaney's contentions, the findings and rulings made by the court taken together with the granting or denial of specific requests of the parties complied with the requirement of RSA 491:15.

See Concord General Mut. Ins. Co. v. Haynes, 110 N.H. 76, 79, 260 A.2d 99, 101 (1969). Finally we have examined Delaney's exceptions to rulings pertaining to evidentiary matters or procedure in the trial and find no error. We see no need to reexamine our ruling in *Jones v. Jones supra* as to the burden of proof on the issue of contributory negligence.

*Exceptions overruled.*

All concurred.