368 So.2d 645 (1979)
Michael MANSUR and Marie Grigsby, Appellants,
v.
Mary G. EUBANKS, Jean M. Barnett, and Auto Owners Insurance Company, Appellees.
Nos. HH-404, HH-405.
District Court of Appeal of Florida, First District.
March 20, 1979.
O'Gwen L. King, of Reeves, Barfield & King, Pensacola, for appellants.
Donald H. Partington, of Clark, Partington, Hart & Hart, Pensacola, for appellees.
MELVIN, Judge.
Appellants-plaintiffs appeal a final summary judgment entered in favor of appellees-defendants in the suit of each plaintiff against such defendant, seeking damages for burns each party-plaintiff claimed that he sustained when gas fumes were ignited in an apartment owned by Eubanks and Barnett and rented by appellant Grigsby.
Barnett showed the apartment to Grigsby in the summer of 1976, and discussed repairs to the refrigerator and painting walls that the owners would do. Occupancy was to begin as of August 1, 1976. Grigsby made a $25 deposit to the rental agency handling the transaction on July 11, and it was understood that such deposit would hold the apartment for her until August 1, at which time payment of the agreed rent was to be made. Grigsby asked for permission to return to the apartment and measure for drapes. She was given a key and was also given permission to move her things into the apartment on a Thursday or *646 Friday prior to August 1. On July 31, Grigsby began the task of moving into the apartment and, in this, she had the assistance of a neighbor, Michael Mansur. Grigsby decided to turn on the gas. She told Mansur she had no experience with gas and asked for his assistance.
Prior to the time Grigsby moved into the apartment there had been no discussion concerning gas, but she knew that if she was going to have the gas turned on that would be her responsibility. Grigsby and Mansur went outside the apartment to the nozzle used to turn on the gas and, having turned on the gas, they walked back into the apartment. Neither claimant checked any of the appliances to make sure that they were turned off before they opened the gas valve to the apartment. They tried without success to light the stove, then decided to see if the hot water heater worked. Mansur struck a match near the bottom of the hot water heater and an explosion occurred. During the process of trying to light the stove, Grigsby smelled gas fumes and asked Mansur to check and see if he also smelled gas. Neither Mansur nor Grigsby notified the owners or checked about the stove prior to the explosion. Grigsby knew that it was her responsibility to make arrangements for the furnishing of the gas supply. Neither defendant ever made any representation to Grigsby or Mansur concerning the gas appliances.
There was a gap between a pipe coming from the back of the stove and a pipe coming into the house from a gas bottle. Gas escaping through such gap was the cause of the explosion. For some reason unknown to the owners prior to the explosion, the connecting length between these two pipes had been removed. At the time of the explosion the stove was in the same position that it occupied at the time the apartment was used by the last tenant. The owners had not authorized anyone to change stoves in the apartment or to move or disconnect any stoves. No tenant had complained that the stove had been disconnected or was not in operational order.
When considering a motion for the entry of a final summary judgment, the trial court must consider all of the agreed facts, as well as inferences properly arising therefrom in the light most favorable to the person against whom such judgment is sought. When equated by that formula, Grigsby was entitled to assume that, upon the delivery to her of the key to the apartment, she had possession of the apartment as a tenant, with rent yet to be paid. The owners did not reserve control over the appliances, however they did agree to fix the refrigerator. In the complaint filed by her in this cause, she identified herself as a tenant. In Brooks v. Peters, 157 Fla. 141, 25 So.2d 205 (1946), the Supreme Court of Florida settled the law relating to the duties of a landlord to a tenant, and the liability of a landlord to the tenant. The court ruled at pp. 206 and 207:
"It is established law that when a landlord delivers to the tenant possession and control of the demised premises, including the plumbing, drains, and appliances for heating, lighting, and power, the landlord is not liable for an injury to the property or person of the tenant or those on the premises in the right of the tenant, although such injuries are attributable to defects in such apparatus, appliances or fixtures. Thus a tenant may not hold a landlord liable for injuries caused by explosion of plumbing, or heating apparatus on premises, the possession and control of which have been surrendered to him in the absence of fraud or concealment. The landlord's liability is based on his right of control over the appliances and he is not liable for injuries from defects in appliances located on the leased premises if he does not reserve control thereof, and accordingly it has been held that he is not liable for defects in water pipes in an apartment when the only purpose of such pipes is to supply and distribute water for the apartment. On the other hand, he is liable for defects in pipes on the leased premises if he retains control thereof.
Where the landlord surrenders possession and control of the leased premises to the *647 tenant, in the absence of fraud or concealment, the tenant assumes the risk as to the condition of the premises, including the heating, lighting apparatus, plumbing, water pipes, sewers, etc. In other words, the rule of caveat emptor applies, hence the landlord is not liable for any personal injuries or sickness of tenants, although attributable to the defects in the fixtures." (cites omitted) (Emphasis supplied)
The plaintiffs urge that we follow the Third District Court of Appeal and adopt the rationale of its decision in Alexander v. Fiftieth Street Heights Co., 334 So.2d 161 (Fla. 3d DCA 1976). We have carefully examined that case, and are aware that the opinion here set forth is in direct conflict with the case mentioned. In arriving at the conclusion that the trial court is to be sustained in the entry of the summary judgments here reviewed, we follow that which we understand to be the law as mandated by the Supreme Court in Brooks v. Peters. If conflict now exists, so be it.
The summary judgments entered in favor of the defendants and against the appellants are each AFFIRMED.
MILLS, Acting C.J., concurs.
ERVIN, J., specially concurring.
ERVIN, Judge, specially concurring.
In the absence of statute,[1] I agree with the majority that the common law rule of caveat emptor, or more accurately, caveat lessee, as stated in Brooks v. Peters, 157 Fla. 141, 25 So.2d 205 (1946), immunizes a landlord from tort liability to his tenant. I also agree that the result reached by the majority is in direct conflict with that reached in Alexander v. Fiftieth Street Heights Co., 334 So.2d 161 (Fla. 3d DCA 1976), and the two cannot be logically distinguished. In Alexander, the tenant was injured by an explosion which resulted from the passage of gas through an uncapped pipe entering the tenant's apartment. Summary judgment favoring the lessor was reversed, the court concluding that comparative negligence, adopted in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), controlled the facts. It rejected the lessor's argument that the tenant had assumed the risk, stating that even though the tenant was aware of the condition which constituted the risk (an open ended gas pipe), she still must be aware of the danger and voluntarily expose herself to the risk. The Alexander opinion cannot be squared with the traditional concept of caveat lessee. No facts were recited in the opinion showing that the lessor had knowledge of the risk, which, as observed infra, is an essential prerequisite to a lessee's right to recovery. Moreover, I think it incorrect to say, under the circumstances, the tenant did not voluntarily assume the risk  unless of course, caveat lessee, a category of implied assumption of risk, is no longer a viable defense.
The Third District Court of Appeal, in Rutecki v. Sorkin, 350 So.2d 486 (Fla. 3d DCA 1977), without expressly discussing caveat lessee, held the defense had been abolished by the Supreme Court's opinion in Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), and reversed summary judgment for the landlord in an action for damages by a tenant injured in a fall on a common walkway on the apartment premises.[2] It concluded that the question of whether the landlord owed a duty to the tenant was to be decided by the jury. While there is language in Blackburn, as quoted at page 487 of Sorkin, which appears to support the *648 conclusion reached, I do not think the Blackburn opinion is authority for the position that the existence of a duty, when applied to landlord-tenant relations, is solely to be decided by a jury.
The specific holding in Blackburn was that the affirmative defense of implied assumption of risk had merged into the defense of contributory negligence and that principles of comparative negligence, as enunciated in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), applied in all cases where the defense was raised. Blackburn v. Dorta, supra at 293. The court's decision was conditioned upon the effect of the Hoffman decision: "If assumption of risk is equivalent to contributory negligence, then Hoffman mandates that it can no longer operate as a complete bar to recovery. However, if it has a distinct purpose apart from contributory negligence, its continued existence remains unaffected by Hoffman." Id. at 289. (e.s.) Assumption of risk, as the Blackburn decision observed, may or may not, depending on the circumstances, be equivalent to contributory negligence. While the two may, on occasions, overlap, or one may exist without the other, 1 Dooley, Modern Tort Law § 6.04 at 156 (1977), both have distinct meanings.[3] Contributory negligence defeats recovery because the conduct of the plaintiff was the proximate cause of the injury, while assumption of the risk defeats recovery because it is an abandonment of the right to complain if an injury occurs. Id. at § 4.04, p. 80. Contributory negligence presumes the existence of a duty owed by a defendant,[4] primary assumption of the risk does not. Primary assumption of risk, one of the defense's categories, is "simply another means of stating that the defendant was not negligent, either because he owed no duty to the plaintiff in the first instance, or because he did not breach the duty owed." Blackburn at 290. In its primary sense, it is, "[i]n actions against a landlord, ..., an alternate means of expressing the doctrine of caveat lessee." Love, Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability? 1975 Wisc.L.Rev. 19, 88.
Caveat lessee is founded upon the principle that there is no duty owed by the landlord to the tenant for any injury received by the tenant on the property leased if the landlord did not know of the condition of the risk involved, and the lessee was so aware.[5] See Restatement (Second) Torts § 358 (1965). Section 358 of the Restatement has been adopted in Florida. Cf. Butler v. Maney, 146 Fla. 33, 200 So. 226 (1941); Wilensky v. Perell, 72 So.2d 278 (Fla. 1954); Feldman v. Jacobs, 148 So.2d 540 (Fla. 3d DCA 1963).[6] The rule of tort immunity is based upon the common law concept which considered a lease a conveyance of land  *649 not a contract. As a result the same principles relevant to the sale of land were applied to leases; therefore, if the tenant failed to inspect the premises prior to entering them, the rule of caveat emptor was applied, and the tenant was considered to have assumed the risk of any personal injury or property damage caused by a defect in existence at the beginning of the lease. Harkrider, Tort Liability of a Landlord, 26 Mich.L.Rev. 260, 262-63 (1928). Once the tenant acquired control of the premises, the landlord was deemed no longer liable to the tenant or other persons for any such defects. Id. at 263.
Here appellants did not allege in their complaints any facts showing knowledge by the lessor of the defective uncapped gas outlet. There was consequently no allegation of any duty owed by the landlord to the tenant. The complaints would clearly have been subject to a motion to dismiss for failure to state a cause of action. Cf. Butler v. Maney, supra. While assumption of the risk is an affirmative defense which may be pleaded affirmatively in a defendant's answer, Fla.R.Civ.P. 1.110(d), it may also be asserted by motion to dismiss if the defense appears on the face of a prior pleading. Id.
From a realistic standpoint, it may be said that neither of the two appellants voluntarily exposed themselves to a known risk simply because the risk was to them unknown. The law, however, presumes volition resulting from the free association, or contract, between lessee and lessor. Primary assumption of risk, i.e., as a counterpart of defendant's lack of duty, "refers to risks that are incidental to a relationship of free association between plaintiff and defendant, ... one which either is at liberty to take or leave as he will." 2 F. Harper & F. James, supra note 3, at 1163. Therefore, if a landlord and a tenant freely enter into a contract for the lease of property, and the landlord is without knowledge of the defective conditions on the property, "it is immaterial whether the risk [to which the tenant is exposed] is reasonable or not." Id. at 1164. It is also irrelevant whether the defendant actually knows of the risk, voluntarily assumes it, or exercises unusual caution in meeting it,[7] since he is presumed to have assumed it if he freely and voluntarily enters into a contract for the lease of property.[8]Prosser on Torts, 451, 459-460 (3d ed. 1964).
If, as I conclude, caveat lessee has not been affected by either Hoffman v. Jones, supra, or Blackburn v. Dorta, supra, the Supreme Court may wish to consider whether a doctrine, which had its inception during the feudal years of rural England, Lesar, The Landlord-Tenant Relation in Perspective: From Status to Contract and Back in 900 Years? 9 Kan.L.Rev. 369, 371 (1961), should still be applied within the context of modern, urban conditions.[9] In the past, the court has not been reticent in changing established principles of law when conditions for their continued application were deemed no longer relevant.[10] The *650 court reserves to itself the option of exercising a "`broad discretion' taking `into account the changes in our social and economic customs and present day conceptions of right and justice.'" Duval v. Thomas, 114 So.2d 791, 795 (Fla. 1959).
In 16th century England, when a lease was first characterized as a conveyance of property, it typically involved a transfer of land for agricultural purposes to a tenant who paid the rent from the proceeds of tilling the soil. Often there were no physical structures on the land and, if such improvements existed, they were only of secondary importance to the conveyance of the realty. Lesar, supra at 371. There was no implied warranty of habitability or fitness of the premises which extended from the landlord to the tenant, and the tenant's obligation to continue rental payments was independent of any defect which might render the premises uninhabitable. Quinn & Phillips, The Law of Landlord-Tenant: A Critical Evaluation of the Past With Guidelines for the Future, 38 Fordham L.Rev. 225, 230, 232-35 (1969). Moreover the tenant had no right to vacate the premises or remain in possession and withhold rental payments because of any defect. Ingalls v. Hobbs, 156 Mass. 348, 31 N.E. 286 (1892). The tenant's only remedy was an action for damages. Id. The rule of caveat emptor also extended to bar a tenant from seeking an action in tort for damages resulting from defects in the premises.
It is possible our Supreme Court may wish to consider the approach followed by the New Hampshire Supreme Court in Sargent v. Ross, 113 N.H. 388, 308 A.2d 528, 64 A.L.R.3d 329 (1973), which, having previously applied the implied warranty of habitability to landlord-tenant contractual relationships,[11] extended it to tort actions as well. The court, in rejecting the doctrine, stated that henceforth landlords, as other persons, must exercise reasonable care not to subject others to an unreasonable risk of harm, and a landlord must act as a reasonable person. 308 A.2d at 534. Moreover, it continued, questions of control, hidden defects, and common or public use, formerly employed to establish a prerequisite to a consideration of the negligence of the landlord, would be relevant only to a determination of the basic tort issues such as foreseeability and unreasonableness of the particular risk. Id. at 535. The court concluded that the focus of inquiry would be shifted from "the traditional question of `who had control?' to a determination of whether the landlord, and the injured party, exercised due care under all the circumstances." Id.
By analogy, the obviousness of the danger existing in machinery is now not an exception to liability in actions where recovery is sought against the manufacturer, but is rather a defense available to the manufacturer by which it may show the plaintiff did not exercise a reasonable degree of care under the circumstances. Auburn Machine Works Co., Inc. v. Jones, 366 So.2d 1167 (Fla. 1979). There appears to be little justification in continuing to apply a doctrine *651 which would bar an action to a tenant whose only notice of the risk is implied by law simply because he acquired control of the premises, yet permit an action to a plaintiff who was injured by a product which is patently dangerous.
To summarize, I conclude that in the absence of statute, and other exceptions not relevant here, caveat lessee still applies to bar a tenant from recovering damages for personal injuries caused by defects on leased premises which the landlord was unaware existed. The wisdom of its continued application may judicially be determined only by the Florida Supreme Court. To that end, I suggest the following question be certified to the Florida Supreme Court pursuant to Art. V, § 3(b)(3), Fla. Const.:
If the doctrine of caveat lessee has not been overruled by Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977), should it still be applied as an absolute bar to a tenant who, with the landlord, is actually unaware of any defects on the premises conveyed, or should tort liability now turn on whether the parties exercised due care under the circumstances of the particular case?
NOTES
[1] Appellants contend that Ch. 63-1326, Sp. Acts of Fla., abrogated the common law rule of caveat lessee because one of its provisions required, if an appliance is disconnected from an outlet and not used immediately afterward, that it be securely closed. See § 1.2.10.11 of the National Fuel Code, adopted by § 17 of the special act. The title to the act, however, states that it applies to areas of Escambia County lying outside of the incorporated municipalities. Appellants' brief states that the apartment was located in Pensacola, Florida; therefore the act would not appear to have any effect.
[2] The court could have based its reversal on one of the exceptions to caveat lessee, which subjects a landlord to liability when a tenant is injured on a common passageway in a multitenant building. See fn. 5.
[3] As noted in 2 F. Harper & F. James, The Law of Torts § 21.1 at 1162 (1956), the term is confusing because it is often used to refer to at least two different concepts, which may overlap and produce the same legal result. Still, the treatise continues, the concepts involve different policies and different conditions for their application. The concepts are described as follows:

(1) In its primary sense the plaintiff's assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk. In such a case plaintiff may not recover for his injury even though he was quite reasonable in encountering the risk that caused it. Volenti non fit injuria. (2) A plaintiff may also be said to assume a risk created by defendant's breach of duty towards him, when he deliberately chooses to encounter that risk. In such a case, except possibly in master and servant cases, plaintiff will be barred from recovery only if he was unreasonable in encountering the risk under the circumstances. This is a form of contributory negligence. Hereafter we shall call this "assumption of risk in a secondary sense." Id., at 1162. (Footnotes omitted.)
[4] "[T]here can be no apportionment of negligence where the negligence of the defendant is not directly a legal cause of the result complained of by the plaintiff." Hoffman v. Jones, supra at 438.
[5] The rule is subject to other exceptions permitting liability (1) where the landlord has negligently repaired the premises after the lessee has entered, and (2) where the landlord has reserved a part of the premises leased for the common use of tenants. 20 Fla.Jur., Landlord and Tenant, §§ 114, 117 (1958).
[6] Fla. Std. Jury Instr. (Civ) 3.5(i) is derived from the principle stated in the above cases.
[7] To use the examples from Blackburn v. Dorta, supra at 291, under caveat lessee, the tenant who runs into his burning apartment to save his child, and the man who rushes in to retrieve his favorite fedora would be equally barred from recovering damages for injuries from the lessor  not because their actions were reasonable or unreasonable, but because, assuming lack of knowledge by the lessor or the nonexistence of any of the exceptions to the doctrine, the lessor owed no duty to either.
[8] Dean Keeton criticizes the presumption as fictional, saying:

[I]n most of the cases it cannot be said that there is any implied in fact promise made by plaintiff to the defendant that the latter is to be relieved of all responsibility. The so-called promise is fictional and the effect is simply to require by law acceptance of the risk because plaintiff elected to take a chance. Keeton, 22 La.L.Rev. 108, 117 (1961).
[9] Whether the doctrine should be judicially abrogated is for the Florida Supreme Court to decide  not the district courts of appeal. The teachings of Hoffman v. Jones, supra, remind us that policy opinions overruling decisions of the Florida Supreme Court may be made only by that court.
[10] E.g., Waller v. First Savings and Trust Co., 103 Fla. 1025, 138 So. 780 (1931) (abolished the common law principle that an action for personal injuries was abated upon the death of the tortfeasor); Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957) (holding a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior); Gates v. Foley, 247 So.2d 40 (Fla. 1971) (permitting the right of a wife to recover for the loss of consortium as a result of her husband's injuries); Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313 (1944) (the relaxation of privity requirements involving food products, permitting an ultimate consumer to recover against a food manufacturer); West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976) (adoption of strict liability in products liability cases).
[11] Florida has by statute adopted the implied warranty of habitability, § 83.51(1), Fla. Stat. (1977), which places the duty to repair on the landlord. When the landlord fails to keep the premises in good repair, the tenant is permitted after notice, either to terminate the rental agreement and vacate or remain in possession and deduct that portion of the rent caused by the landlord's noncompliance. Section 83.56(1). The Florida Residential Landlord and Tenant Act's provisions impose contractual  not tort  liability upon the landlord. The express intention of the Law Revision Council in drafting the proposed act was to create an implied warranty of habitability which, when breached, relieved or diminished the tenant's obligation to continue rental payments. See the Florida Law Revision Council Report and Recommendation on Florida Landlord-Tenant Law at p. 5 (March, 1973).