458 So.2d 806 (1984)
Leonard KLATMAN, Appellant,
v.
Herman BARNETT and Roslyn Barnett, His Wife, Appellees.
No. 83-2769.
District Court of Appeal of Florida, Fourth District.
October 24, 1984.
Rehearing Denied December 25, 1984.
Richard A. Barnett of Richard A. Barnett, P.A., and Howard S. Miller, Hollywood, for appellant.
G. William Allen, Jr., and Carl E. Jenkins of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, for appellees.
PER CURIAM.
Affirmed.
HERSEY and BARKETT, JJ., concur.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I concur with the majority but write to express some observations. The facts show that appellant was injured while crossing a poorly maintained parking lot on the premises leased by his employer from the appellee landowners. The lease between the employer and the landowners required the former to maintain the parking lot. The injured employee sued the landowners for their failure to maintain the parking lot in a reasonably safe condition. Depositions of witnesses reveal facts from which it could be reasonably inferred that the parking lot contained holes prior to the lease of the property to the employer. The trial court awarded summary judgment in favor of the landowners, their having surrendered possession and control of the premises.
In his scholarly concurring opinion in Mansur v. Eubanks, 368 So.2d 645 (Fla. 1st DCA 1979), quashed, 401 So.2d 1328 (Fla. 1981), Judge Ervin places the relationship of landlord and tenant in historical perspective. So does John J. Boyle, Esquire, in his current article, The Landlord's Warranty of Habitability: A Plea for Statutory Reform, 18 The Florida Bar Journal 509 (1984). Both Judge Ervin and Mr. Boyle were concerned with liability of the landowner to the tenant in their studies. Yet, by his following remarks, Judge Ervin has raised a question in my mind that I felt bore expression herein:
It is possible our Supreme Court may wish to consider the approach followed by the New Hampshire Supreme Court in Sargent v. Ross, 113 N.H. 388, 308 A.2d 528, 64 A.L.R.3d 329 (1973), which, having previously applied the implied warranty of habitability to landlord-tenant contractual relationships, extended it to tort actions as well. The court, in rejecting the doctrine, stated that henceforth landlords, as other persons, must exercise reasonable care not to subject others to an unreasonable risk of harm, and a landlord must act as a reasonable person. 308 A.2d at 534. Moreover, it continued, questions of control, hidden defects, and common or public use, formerly employed to establish a prerequisite to a consideration of the negligence of the landlord, would be relevant only to a determination of the basic tort issues such as foreseeability and unreasonableness of the particular risk. Id. at 535. The court concluded that the focus of inquiry would be shifted from "the traditional question of `who had control?' to a determination of whether the landlord, and the injured party, exercised due care under all the circumstances." Id.
By analogy, the obviousness of the danger existing in machinery is now not an exception to liability in actions where recovery is sought against the manufacturer, but is rather a defense available to the manufacturer by which it may show *807 the plaintiff did not exercise a reasonable degree of care under the circumstances. Auburn Machine Works Co., Inc. v. Jones, 366 So.2d 1167 (Fla. 1979). There appears to be little justification in continuing to apply a doctrine which would bar an action to a tenant whose only notice of the risk is implied by law simply because he acquired control of the premises, yet permit an action to a plaintiff who was injured by a product which is patently dangerous.
To summarize, I conclude that in the absence of statute, and other exceptions not relevant here, caveat lessee still applies to bar a tenant from recovering damages for personal injuries caused by defects on leased premises which the landlord was unaware existed. The wisdom of its continued application may judicially be determined only by the Florida Supreme Court.
368 So.2d at 650-51 (footnote omitted).
The question is simple enough; namely, why should landowners be absolved from liability to a lessee's employee because of the lessee's assumption of responsibility for maintenance, when the defect occasioning injury to the employee was in existence at the time of the lease and was known to the landowners to exist? Why should an employee be restricted in such circumstance to a claim for worker's compensation against his employer, leaving the landowner unaccountable to the employee  who has no control over the condition of the property or over his employer?
At oral argument, appellant's counsel raised a number of points to justify this court's certification of an appropriate question to the Supreme Court of Florida in this case, in order to determine if the exception to the doctrine of caveat lessee, carved out by the court in a residential framework, by Mansur v. Eubanks, 401 So.2d 1328 (Fla. 1981), should be extended to commercial leases. He suggested the following reasons for extending the exception:
1. The cutting of feudal vestiges, no longer appropriate to modern society's concerns.
2. The absence of a landowner's incentive to remedying known defects by perpetuation of caveat lessee.
3. The absence of a distinction with a difference between dangerous instrumentalities and dangerous conditions.
4. The appropriate bearing of risk by landowners through insurance.
5. The absence of control by the employee over the landowner or the employer.
6. The public's use of commercial property.
7. The landowners' superior knowledge of the condition of the property.
8. The incompleteness of relief available from worker's compensation; e.g., no recovery for pain and suffering.
9. The ongoing relationship between landowners and their property by virtue of a lease as opposed to a termination of that relationship by virtue of a sale.
Appellee's counsel countered the foregoing reasons by expressing concern with the following:
1. More lawsuits, involving unnecessary defendants.
2. The absence of justification for landowners to bear the expense of exposure, having contractually obligated the employer to effect maintenance.
Personally, I find merit in the reasons suggested by appellant's counsel, as well as possible answers to appellee's above concerns in the form of section 57.105, Florida Statutes (1983) and Third Party Complaints. However, I feel that these are social issues that are best debatable on the floor of the two legislative bodies elected by the citizens of Florida. It was the Legislature which codified the implied warranty of habitability in Chapter 83, Florida Statutes; therefore, it seems appropriate for it to be the body to consider this particular issue.
That is not to say that the highest court of this state has not appropriately responded to societal needs. As Judge Ervin has pointed out:

*808 In the past, the court has not been reticent in changing established principles of law when conditions for their continued application were deemed no longer relevant. The court reserves to itself the option of exercising a "`broad discretion' taking `into account the changes in our social and economic customs and present day conceptions of right and justice.'" Duval v. Thomas, 114 So.2d 791, 795 (Fla. 1959).
368 So.2d at 649, 650 (footnote, citing examples of such changes, omitted).
In his 1984 introduction to the paperback edition of Megatrends, John Naisbitt describes Florida as one of the two bellwether states of the nation. Hopefully, the courts of this state will continue to initiate sensitive opinions in the future which respond to changing societal needs. In this instance, however, the appropriate response seems to be legislative.